In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 06-1039 & 06-1590

BRIAN SIDES,

*Plaintiff-Appellant,*

*v.*

CITY OF CHAMPAIGN, A Municipal Corporation,
FREDERICK STAVINS, City Attorney,
RHONDA OLDS, City Attorney,
RANDALL CUNNINGHAM, Champaign Police Officer,
JOSEPH KETCHEM, Champaign Police Officer, and
COLBY OLESON, Champaign Police Officer,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 03 C 2118—**Harold A. Baker**, *Judge.*

ARGUED DECEMBER 4, 2006—DECIDED AUGUST 8, 2007

Before EASTERBROOK, *Chief Judge*, and CUDAHY and
SYKES, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Brian Sides was detained by
City of Champaign police officers, then cited and prose-
cuted for violating a city ordinance against public inde-
cency. He was convicted and fined. He then filed the
present action in federal court against the city, several city
police officers and two city attorneys under 42 U.S.C.

§ 1983, alleging that the detention and prosecution violated numerous provisions of the United States Constitution. The district court granted summary judgment to the defendants on all counts. Sides now appeals, alleging substantive and procedural errors in the district court's judgment. We affirm.

I. Background

Because Brian Sides appeals from a grant of summary judgment against him, we will construe the evidence and draw all reasonable inferences in his favor. *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). On July 10, 2001, Anson Huckleby was working as a loss-supervisor at a Target store in Champaign, Illinois. At about 1:00 in the afternoon, while he was watching the real-time video feeds from the store's exterior surveillance cameras, he saw Sides and Christina Manuel in a car. Sides was masturbating in front of Manuel. Huckleby, believing that the two were having sex,[1] recorded the act with the surveillance camera and called the police twice, first to report public sex and then to report that the car had moved across the street to a parking lot next to a Borders Books and Café.

The police showed up, among them plainclothes Officer Dale Radwin (not named in Sides's complaint) and Officers Randall Cunningham, Joseph Ketchem and Colby Oleson. Cunningham ordered Sides out of the car and, along with the other officers, questioned him. Sides refused to answer any questions on grounds of Fifth Amendment privilege. Manuel remained in the car. Oleson questioned

---

[1] Apparently, Sides's defense to the criminal public indecency charges was that he was "gratifying himself before [his] partner" rather than having sex with her. (Sides Dep. 13.)

her through the passenger window; she responded to questions and seemed remorseful.

The detention lasted for about an hour, and for Sides was a physically (as well as socially) unpleasant experience. Officer Cunningham ordered Sides to leave the car and stand with his legs and buttocks against its right front fender. It was a hot day, over ninety degrees Fahrenheit, and being in the middle of a black asphalt parking lot did not make things any cooler. Worse, Sides had not cut the engine and Manuel left it running in order to air condition the car, heating the car hood even more. The police officers took turns going into their cars to cool off, but, although Sides complained that he was dizzy and dehydrated, and that his buttocks were sore from standing against the hot, vibrating car, the officers did not give him permission to move.

The officers cited Sides, but not Manuel, for violating Champaign's public indecency ordinance, which prohibits anyone over sixteen years of age from performing acts of sexual intercourse, sexual penetration or "lewd exposure of the body" in public. Champaign Mun. Code § 23-111. The notice to appear listed a minimum fine amount of $175, which the city later claimed was imposed by the city municipal code. *Id.* § 1-21(b) & Table I. After investigation, Sides discovered that the minimum fine had not been listed in the appropriate section of the code published at the time he committed the offense; he argued to the state trial court that no such minimum fine applied to him. The court agreed, dismissing the city's complaint without prejudice to refiling without the purported minimum fine. The city filed a new complaint as amended. *City of Champaign v. Sides*, 810 N.E.2d 287, 292, 294 (Ill. App. Ct. 2004). Sides was convicted and fined $500 under a jury instruction that permitted the jury to impose a fine from $1 to $750. *See* Champaign Mun. Code § 1-21(c).

While the state appeal of his criminal conviction was pending, Sides filed the present action in federal court, claiming that the various defendants committed four constitutional wrongs. First, Sides claims that Frederick Stavins and Rhonda Olds, the Champaign City Attorneys who prosecuted him for public indecency, violated the Ex Post Facto Clause of the United States Constitution by conspiring to have him sentenced under a non-existent minimum fine provision. Second, he claims that the police officers cited him and not Manuel for public indecency because he is a man and she is a woman, in violation of the Equal Protection Clause. Third, he claims that the officers were deliberately indifferent to his serious medical needs when they made him stand against his running car in the middle of a hot parking lot. Fourth, he claims that Officer Radwin (not named as a defendant in the complaint) committed an unreasonable search of his wallet.

The defendants filed a motion for summary judgment, as did Sides. The district court granted summary judgment to the defendants on all counts. Sides also sought to amend his complaint to name Officer Radwin as a defendant. (Sides had originally brought his search claim against the Target employee, Huckleby, having confused the identity of Radwin and Huckleby.) The district court denied Sides's motion to amend.

## II. Discussion

Sides now appeals the district court's grant of summary judgment to the defendants, and in so doing attacks several procedural decisions leading up to that judgment.

A. Jurisdiction

But first, Sides's conviction poses a jurisdictional problem we must address. The federal statute allowing collateral review of state convictions, 28 U.S.C. § 2254, applies only to persons "in custody," and Sides was sentenced to pay a fine but not to imprisonment or any other form of custody. He therefore is not entitled to review under § 2254. Some passages in his complaint and brief suggest a belief that 42 U.S.C. § 1983 allows any form of review not authorized by § 2254, but the Supreme Court has never suggested that the "custody" requirement of § 2254 may be evaded so easily.

Without the aid of § 2254, any effort to obtain review of a conviction—review that would imply a declaration of innocence, or even a return of the $500 fine—runs headlong into the *Rooker-Feldman* doctrine, which establishes that, except to the extent authorized by § 2254, only the Supreme Court of the United States may set aside a judgment entered by a state court. We are not authorized to afford relief "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 126 S. Ct. 1198, 1202 (2006). *See also, e.g.*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

We granted the parties permission to file supplemental memoranda discussing the effect on this case of the *Rooker-Feldman* doctrine. Sides disclaimed any request to review the conviction. (Supp. Br. of Pl.-Appellant at 5-6.) This means that any equal-protection challenge to the conviction (as opposed to the initiation of the prosecution) has been abandoned. We also interpret this disclaimer to foreswear any demand for damages equal to the value of the fine, because such an award would amount to review of the criminal conviction.

Sides does want damages on account of the initial notice's statement that the minimum fine was $175, but this does not call into question the conviction or the fine imposed by the state court. After all, Sides *prevailed* in state court on his argument that the fine had no lower bound. *Exxon Mobil* holds that a litigant who prevails in state litigation is not jurisdictionally barred from pursuing federal litigation—though principles of issue preclusion or claim preclusion, applied under 28 U.S.C. § 1738, may limit the extent to which federal relief may differ from the relief provided by the state judiciary. 544 U.S. at 293. Preclusion is an affirmative defense, however, which the defendants have not invoked on appeal.

Arguments concerning events that precede the conviction—arguments that would be equally strong (or weak) if Sides had been acquitted—likewise are outside the scope of the *Rooker-Feldman* doctrine. All of the events that took place in connection with his arrest are in that category, *cf. Wallace v. Kato*, 127 S. Ct. 1091 (2007), as is the state actors' decision to press charges against Sides and require him to bear the expense and inconvenience of trial. We therefore address Sides's claims on their merits.

B.  Procedural Rulings

Before addressing the district court's grant of summary judgment, we address Sides's claims of erroneous procedural decisions that might have caused that judgment, and in particular his contention that the district court erred in denying his motion to amend his complaint in order to name Officer Dale Radwin as a defendant. We review a district court's denial of a motion to amend a complaint for abuse of discretion. *Crestview Vill. Apartments v. U.S. Dep't Hous. & Urban Dev.*, 383 F.3d 552, 557 (7th Cir. 2004). Rule 15(a) of the Federal Rules of Civil Procedure

allows a party to amend its pleadings once "as a matter of course." Fed. R. Civ. Proc. 15(a). Subsequent amendments may be made "only by leave of court or by written consent of the adverse party." *Id.* Courts are to use their discretion under Rule 15(a) to liberally grant permission to amend pleadings so long as there is not undue prejudice to the opposing party or undue delay, bad faith or dilatory motive on the part of the movant. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2004).

Sides initially thought Dale Radwin was Anson Huckleby, the loss-prevention supervisor at Target. He filed a separately numbered action against Huckleby and included a claim against the officers in this case for allowing a private individual to search him. Sides discovered Radwin's true identity on December 14, 2004, and, after first failing to attach his amended complaint to his motion, managed to finally file an amended complaint on June 1, 2005, the deadline that the court's case management order set for amending the pleadings. But while the amended complaint included allegations concerning Radwin, it did not name him as a defendant; Sides thought at the time that he did not have a good claim against Radwin due to the statute of limitations. On July 12, 2005, nearly seven months after learning of Radwin's involvement in the case, Sides changed his mind (apparently concluding that he might be entitled to equitable tolling of the statute of limitations based on the defendants' alleged concealment of Radwin's identity) and sought to file a second amended complaint naming Radwin as a defendant.

We cannot conclude that the district court abused its discretion in denying the motion to amend; the record supports a finding of both undue delay and prejudice to Radwin if the amendment were allowed. Sides was on notice of his possible claim against Radwin and his possible equitable tolling argument by December 14, 2004,

when he discovered that he had allegedly been misled about Radwin's identity, and for no reason other than a failure to investigate the possible legal basis of his claim delayed any attempt to bring that claim for seven months. At that point, discovery was set to close in only twenty days, on August 1, 2005, leaving Radwin with little time to prepare a defense that up to that point, given Sides's decision not to name him as a defendant, he believed he would not have to make. The court's case management order incorporated judgments about the amount of time in which the parties should have been able to discover and research their claims, and we have been offered no reason to overturn these judgments. *See, e.g.*, *Conner v. Ill. Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005). Accordingly, we are unable to say that the district court abused its discretion in refusing to permit Sides to file a second amended complaint.

Sides also alleges several evidentiary errors—the striking of a pair of affidavits (his own and that of a purported expert on municipal legislation) and the denial of several motions in relation to the alleged sex video— but, as will be seen, all of the purported errors are completely harmless. For purposes of review we will assume the contents of the stricken affidavits and Sides's contentions about the videotape to be true.[2]

C.  Summary Judgment

We therefore finally turn to the district court's grant of summary judgment, which we review *de novo. Deere & Co. v. Ohio Gear*, 462 F.3d 701, 705 (7th Cir. 2006). Summary

---

[2]  Sides alleges in connection with these orders that the district court was biased against him. He fails to show anything like bias necessitating reversal.

judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### 1. "Ex Post Facto" Claim

We begin our analysis with Sides's "Ex Post Facto" claim, though this is an improper name for it. The Ex Post Facto Clause prohibits punishment pursuant to a law with retroactive application, but Sides claims that the $175 minimum fine provision for public indecency was never passed by the Champaign city council at all.[3] More to the point, Sides was not even sentenced pursuant to the suspect provision. The trial court required the city to file a new complaint without the minimum fine and the jury was instructed that if it convicted it could sentence Sides to a fine anywhere between $1 and $750, in accordance with the general fine provision of the municipal code. Champaign Mun. Code § 1-21(c).

As far as we can tell, Sides's claim is that the city, by originally claiming that the minimum fine for public indecency was $175, prevented Sides from settling his

---

[3] Although the defendants have not argued this issue, we note that the record contains a 1997 ordinance authorizing a minimum fine (R. 112); in his deposition, defendant Stavins suggested that the fine might have been left out of certain later fine tables by accident (Stavins Dep. at 52). We need not consider this evidence to decide the case.

criminal dispute by paying the city $1. However, the Champaign Municipal Code gave him no right to such a settlement. There is a code provision allowing any person charged with an offense listed on "Table I," a list of minimum fines, to settle her case by paying the minimum fine. *Id.* § 1-24(a). But Sides's argument is precisely that public indecency was never listed on Table I by the city council—that there was no minimum fine for public indecency—and there is no statutory settlement procedure for offenses that are not listed on the table. Assuming counterfactually that the municipal code permitted Sides to settle the charges against him by paying a fine, the code specifies that the "City Attorney may, in his or her discretion, elect to reject any such minimum fine as settlement . . . prior to the date the notice to appear and complaint . . . is filed with the Circuit Court." *Id.* § 1-24(c). Sides's hypothetical settlement right would therefore exist only at the prosecutors' discretion, and interests the government can deny at will are not protected by the Due Process Clause. *See, e.g.*, *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir. 2006). We cannot see how Sides alleges that he has been deprived of any constitutional right.

Even assuming, for the sake of argument, that Sides's allegations made out a claim under § 1983, it would still fail due to a combination of absolute prosecutorial immunity and lack of proof. According to Sides, Stavins and Olds deliberately made an incorrect legal argument to the state trial court, but they were absolutely immune for their conduct at the trial. *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). This immunity would not extend to an improper and misleading alteration to the city's published municipal code, *see id.*, but Sides has not presented evidence to show that Stavins and Olds conspired to do such a thing. Stavins testified that he supervised the city legal department, but a supervisor is not liable for the

acts of her subordinates under § 1983 unless she was aware of and approved her employees' conduct. *Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000). There is no evidence that Stavins and Olds themselves faked the code or knew about someone else at the legal department doing it. Indeed, in his deposition Sides offered nothing but conjecture as to what had gone on inside the city legal department and admitted that he and his sources were basically "outsiders looking in." (Sides Dep. at 43.) Summary judgment on this count was appropriate.

### 2. Equal Protection

Next, Sides argues that the district court improperly granted the defendants summary judgment on his claim that the decision to cite him and not Manuel for public indecency violated the Equal Protection Clause. To establish a *prima facie* case of discriminatory prosecution on the basis of sex, Sides must show that the police failed to bring charges against female lawbreakers who were similarly situated to him in all relevant respects. *Anderson v. Cornejo*, 355 F.3d 1021, 1024 (7th Cir. 2004). Sides claims that Manuel was so situated, but Officer Cunningham explained that the reason the police cited Sides and not Manuel was that Sides did not cooperate with the officers, never giving Cunningham a "straight answer" as to what went on behind the Target (Cunningham Dep. at 23), while Manuel was "cooperative" with Oleson, "letting him know exactly what took place and being remorseful" (*id.* at 40). Sides claims that rewarding Manuel for cooperating with the police violates the Fifth Amendment, but his argument is not supported by citation to precedent and the criminal justice system routinely rewards cooperation with leniency in many contexts, to pick one obvious example, the advisory Sentencing Guidelines' adjustment for acceptance of

responsibility. Similar leniency exercised through prosecutorial discretion should present no trouble.

### 3.  Unreasonable Inattention to Medical Needs

Third, Sides claims that the officers were deliberately indifferent to his serious medical needs during his detention in the parking lot. All of the briefs use the "deliberate indifference" approach from jurisprudence under the Eighth Amendment, *see Farmer v. Brennan*, 511 U.S. 825, 828 (1994), but that provision does not apply until a suspect has been convicted. The governing standard at the time of arrest is the Fourth Amendment's ban on unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Between arrest and conviction the Due Process Clause of the Fifth Amendment supplies the standard. *See Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979) (holding that the right inquiry between arrest and conviction is whether the detainee is subject to "punishment").

Although *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001), asks whether the officers' conduct at the time of arrest evinced "deliberate indifference to a serious injury or medical need," the parties to *Chapman* did not join issue on the proper standard or discuss the bearing of *Graham* and *Bell* on contentions of this kind. A decision that employs a mutual (and mutually mistaken) assumption of the parties without subjecting it to independent analysis does not constitute a holding on the subject. *Chapman* should not be understood as extending the domain of Eighth Amendment analysis beyond the bounds set by *Graham* and *Bell*.

Sides contends that, while he was standing against his car at the officers' instruction, his buttocks became sore and he became dizzy and dehydrated. This may have been unpleasant, but the officers' conduct cannot be called

"unreasonable." The Fourth Amendment's standard is objective, and no jury could conclude that the information known to the police at the time would have led reasonable officers to move Sides elsewhere while the investigation continued. He has not offered proof that his appearance portended heat stroke or implied a need for medical attention, nor does he contend that the officers delayed unduly once their on-the-scene investigation had been concluded. All the record shows is that Sides became uncomfortable, and the Constitution does not require arrests to be conducted in comfort. He did not ask that the police take him to the station-house or write a citation immediately; he insisted that they not charge him at all. Having rejected the option of swift action, he is poorly situated to complain about the need to stand still while the officers decided how to proceed.

### 4. Radwin's Search

Finally, Sides argues that the district court erred in granting summary judgment to the defendants on his claim that plainclothes Officer Dale Radwin improperly searched his wallet and made baseless accusations against him. Sides has an obvious problem here: he did not name Radwin in his complaint, and the district court did not abuse its discretion in refusing to permit him to name him in a second amended complaint. Although Sides argued below that the other officers should be held liable for failing to stop Radwin, he has not made (or provided any support for) such an argument here.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

A true Copy:

Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*