In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-4126

MARIO WILLIAMS,

*Plaintiff-Appellant,*

*v.*

CHICAGO POLICE OFFICER MARCELO RODRIGUEZ,
UNKNOWN and UNNAMED CHICAGO POLICE OFFICER, and
CITY OF CHICAGO,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 0157—**Samuel Der-Yeghiayan**, *Judge.*

———————

ARGUED SEPTEMBER 28, 2007—DECIDED DECEMBER 6, 2007

———————

Before POSNER, FLAUM, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* On February 15, 2005, Plaintiff
Mario Williams was driving on Lake Shore Drive in
Chicago, Illinois when his asthma allegedly flared up,
causing him to pull his vehicle over. Defendant Police
Officer Marcelo Rodriguez pulled up to Williams's vehicle,
suspected Rodriguez had been drinking, and after ad-
ministering field sobriety tests, arrested Williams for
driving under the influence. When Williams was taken to
the police station and asked to take a breathalyzer test, he
informed Rodriguez that he had asthma, could not breathe,
and needed his medication. While in lockup, Williams

repeatedly requested his inhaler for four to five hours before receiving it, and his requests for additional medication went unanswered. Charges were brought against Williams for driving under the influence and obstructing traffic, and Williams was found not guilty on all counts. Williams subsequently filed the current lawsuit in the Northern District of Illinois, which included false arrest and deliberate indifference to medical needs claims pursuant to 42 U.S.C. § 1983, as well as Illinois state claims for denial of medical treatment and malicious prosecution. The parties filed cross-motions for summary judgment which the district court granted for defendants on all grounds. This appeal followed. For the following reasons, we partially modify the district court's grant of summary judgment to an order to dismiss, and as so modified, affirm.

## I.  Background

The facts in this section are presented in the light most favorable to Plaintiff Mario Williams, the nonmoving party on appeal, as is required for purposes of summary judgment.

Early in the morning on February 15, 2005, Plaintiff Mario Williams and his brother Mark were driving southbound on Lake Shore Drive in Chicago, Illinois after giving a ride home to one of Mario's friends. Mario Williams, who was about to turn fifty, had been diagnosed in 1995 with chronic asthma, which had flared up while at work on February 14 before improving when he returned home. While driving home with his brother however, Williams did not feel well and the two decided to switch drivers.

At approximately 1:30 a.m., Williams pulled his vehicle over and put his hazards on so he and his brother could switch places. Williams stopped his vehicle in the far right

southbound driving lane on Lake Shore Drive between Monroe Street and Jackson Boulevard, adjacent to Grant Park in downtown Chicago. Traffic was light on the road at that time. Defendant Marcelo Rodriguez, an on-duty City of Chicago police officer, noticed Williams's vehicle at the traffic light at the intersection of Monroe Street and Lake Shore Drive and then saw Williams stop the vehicle in the far right lane. Shortly after Williams stopped his vehicle, Rodriguez pulled behind Williams's truck. When Officer Rodriguez approached the vehicle, the driver's side window was already rolled down. According to Rodriguez, he observed an odor of alcohol from Williams's breath and noticed that Williams's eyes were bloodshot.[1] Rodriguez asked Williams if he had been drinking, to which Williams responded "no." Williams then informed Rodriguez that he intended to switch seats with his brother because he "wasn't feeling well."

Officer Rodriguez then asked Williams to perform field sobriety tests. On the finger-to-nose test, Williams successfully completed the task, but swayed while doing so. With respect to the one-leg stand test, Williams swayed while balancing himself on one foot and did not maintain his balance for the full thirty seconds the test contemplates. Finally, Williams took the walk-and-turn test, in which he failed to touch his heel to his toe several times and stepped off the line on a few occasions. After administering the field sobriety tests, Officer Rodriguez placed Williams under arrest for driving under the influence.

---

[1] Williams disputes Officer Rodriguez's contention that he detected an odor of alcohol on Williams's breath. The only evidence Williams offers to support his argument is testimony that he had not been drinking. The fact that Williams had not had anything to *drink* however, does not call into dispute Officer Rodriguez's testimony as to what he *smelled*.

Officer Rodriguez took Williams to the police station for processing. Williams's property was inventoried, and although another officer performed this task, Officer Rodriguez saw Williams's albuterol inhaler when Williams emptied his pockets. After Williams had been at the station over an hour and after Williams's twenty minute observation period, Rodriguez asked Williams to blow into a breathalyzer. Williams then told Rodriguez that he had asthma, needed his medication, and could not breathe. The breathalyzer test was not administered.

Williams did not mention his medical condition at any other time during processing to Officer Rodriguez or any of the other four or five officers nearby. Additionally, Williams did not at any point request that he see a doctor. Instead, Williams was trying to control his breathing by minimizing the amount he was talking.

While Williams was being processed, his brother, Mark, and wife, Shirley Ramsey Williams, came to the station and met briefly with Officer Rodriguez. Williams's wife asked Officer Rodriguez if Williams had his asthma inhaler, to which Rodriguez replied "yes." Then, just to be sure, Williams's wife gave Officer Rodriguez an extra albuterol inhaler and asked that it be given to Williams. Officer Rodriguez responded that he would do so. This however, did not occur. Officer Rodriguez did not give Williams his inhaler and also ignored Williams when he asked Rodriguez if his wife had brought his medicine.

After Officer Rodriguez completed his paperwork, he took Williams to the lockup area, where he left Williams with the lockup keeper, along with Williams's paperwork and property bag. This marked the end of Williams's contact with Officer Rodriguez during his detention.

While in lockup, Williams hollered for hours that he needed his inhaler and knocked on the window and walls of his cell. After approximately four to five hours, Williams

was told he would be given his inhaler. When the lockup keeper gave the inhaler to Williams, he only let Williams take a couple of puffs before placing the inhaler back in the property bag. Williams then asked the lockup keeper if he could call his wife so she could bring his other asthma medication. Williams told him that if he did not receive the proper medication for his asthma he could die, and asked for his help. The lockup keeper ignored Williams and did not respond to his requests.

During this period of time, Williams's wife called the police station at least eight times to check in on her husband, and specifically asked about Williams's medical condition on the first two occasions. The woman Williams's wife spoke with replied that if Williams was having any medical difficulties, he would let the lockup keeper know.

On February 16, 2005, Williams's wife picked Williams up after his release from the station. Williams did not immediately seek medical treatment upon his release, but did go to the hospital for his asthma on February 17 or 18.[2]

The incident on February 15, 2005 resulted in three charges being brought against Williams: 1) driving under the influence in violation of 625 ILL. COMP. STAT. 5/11-501(a) (2004); 2) obstruction of traffic in violation of 625 ILL. COMP. STAT. 5/11-1416 (2004); and 3) obstruction of traffic in violation of the Municipal Code of Chicago § 9-40-130 (1999). Following a bench trial in the Circuit Court of Cook County, Williams was found not guilty on all three counts on February 22, 2006.

---

[2] Plaintiff's deposition, as well as his wife's, indicate that Williams went to the emergency room within a day or two of his arrest due to asthma-related problems. The medical records show however, and Plaintiff's counsel confirmed at oral argument, that Williams's trip to the hospital was instead for pre-scheduled care related to his asthma.

On January 11, 2006, Williams brought this action against Officer Rodriguez, an unknown and unnamed Chicago police officer, and the City of Chicago. The complaint included two federal claims pursuant to 42 U.S.C. § 1983: a false arrest claim against Officer Rodriguez and a deliberate indifference to medical needs claim against Officer Rodriguez and the unknown and unnamed officer. Williams also brought two supplemental Illinois state claims: a denial of medical treatment claim against all defendants and a malicious prosecution claim against Officer Rodriguez and the City of Chicago. Both parties filed cross-motions for summary judgment, which the district court granted for defendants in its entirety and denied for Williams in its entirety. Williams appeals the district court's grant of summary judgment on all counts.

## II. Analysis

On appeal, we review a district court's grant of summary judgment *de novo*. *Whitman v. Nesic*, 368 F.3d 931, 933 (7th Cir. 2004). In doing so, we "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000) (quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000)). Summary judgment is appropriate when the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). With respect to Williams's claims under 42 U.S.C. § 1983, we will only address whether defendants are protected by qualified immunity if, as a threshold matter, we find that the facts, when viewed in the light most favorable to Williams, establish that Williams's constitutional rights were violated. *Russell*

*v. Harms*, 397 F.3d 458, 462-63 (7th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001)).

## A. False Arrest

In order for Williams to prevail on his § 1983 false arrest claim, he must show that probable cause for his arrest was lacking. *See Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998) ("An essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause."). If probable cause to arrest is found to exist, it "is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Police officers possess probable cause to arrest when "'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed' an offense." *Id.* (quoting *Kelley*, 149 F.3d at 646). Probable cause is not evaluated by the court based upon "the facts as an omniscient observer would perceive them," but instead is determined by the facts "as they would have appeared to a reasonable person in the position of the arresting officer." *Id.* (quoting *Kelley*, 149 F.3d at 646; citing *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000)).

In his appeal of this issue, Williams primarily focuses upon whether Officer Rodriguez possessed probable cause to arrest him for driving under the influence. Williams contends that the district court failed to properly construe the record in the light most favorable to him and ignored the fact that he did not display many of the factors Officer Rodriguez was trained to look for in determining whether an individual is under the influence. The probable cause analysis however, need not be limited solely to whether

probable cause existed to arrest Williams for driving under the influence. Although Officer Rodriguez arrested Williams for driving under the influence, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In *Devenpeck*, the Supreme Court rejected "[t]he rule that the offense establishing probable cause must be 'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." *Id.* Instead, the Fourth Amendment's focus on reasonableness dictates an objective analysis, whereby, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996)). Thus, the probable cause analysis in this case need not be limited to whether Officer Rodriguez had probable cause to arrest Williams for driving under the influence or the obstruction of traffic violations for which he was later charged. Instead, the issue is whether a reasonable officer, with the same information known to Officer Rodriguez at the time, would have had probable cause to arrest Williams for any offense. *See United States v. Williams,* 495 F.3d 810, 817-18 (7th Cir. 2007) (following *Devenpeck,* finding that once the officers had probable cause to arrest defendant, "it is irrelevant that their investigation eventually found evidence of other crimes, that he was originally charged with those other crimes, or that the [sic] those crimes were charged based on an investigation that dragged out longer than was warranted by their original reasonable suspicion"); *see also Apodaca v. City of Albuquerque*, 443 F.3d 1286 (10th Cir. 2006) (following *Devenpeck*, the plaintiff's wrongful arrest

claim failed since, although officers lacked probable cause to arrest the plaintiff for the stated reason of violating a restraining order, at the time of the arrest the officer was aware that the plaintiff's vehicle was being operated without insurance, a misdemeanor offense).

Illinois law provides that it is an offense to stop or park a vehicle "upon the roadway when it is practicable to stop, park or so leave such vehicle off the roadway." 625 ILL. COMP. STAT. 5/11-1301(a) (2004). This statute does not apply to business or residential districts and is applicable regardless of whether the vehicle is attended or unattended. *Id.*; *see People v. Glisson*, 835 N.E.2d 162, 173 (Ill. App. Ct. 2005) ("we read the language that the statute is applicable only 'outside a business or residence district' to mean the statute is applicable to areas other than business or residential districts"). Officer Rodriguez in this case observed Williams's vehicle stopped in the far right lane of southbound Lake Shore Drive with its hazard lights on. Despite this however, Williams claims that no probable cause existed to find him in violation of this statute.

Williams first contends that it was not "practicable" for him to stop elsewhere since this was a medical emergency. Even if Williams was in fact suffering from a severe medical emergency however, this would not have been apparent to a reasonable officer on the scene. All Williams told Officer Rodriguez was that he was not "feeling well," and he did not display any physical symptoms indicating that it was necessary to stop the vehicle on Lake Shore Drive. Furthermore, if Williams needed to stop the vehicle, he did not need to do so on Lake Shore Drive, which is part of Highway 41. Williams stopped his vehicle between two cross-streets and could have turned off on one of these roads and found an appropriate place to switch drivers.

Williams next argues that no probable cause existed to find he had violated 625 ILL. COMP. STAT. 5/11-1301(a) because there were still multiple unobstructed lanes available for other vehicles to go around him. The statute's text states that "but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles." 625 ILL. COMP. STAT. 5/11-1301(a). The Appellate Court of Illinois has determined that this language "does not mean that drivers can pull over anywhere they please as long as there is a second lane of traffic." *Glisson*, 835 N.E.2d at 173. Instead, the court determined that "it means that a driver for whom it is not practicable to pull off the road onto a shoulder has to pull as far to the side of the road as possible in order to allow the passage of other vehicles around his or her vehicle." *Id.* This clause therefore, did not permit Williams to stop the vehicle where he did so long as he did not obstruct all lanes of traffic. Further-more, even if Lake Shore Drive did not have a shoulder for Williams to pull off on, as discussed above, given the number of cross-streets in the area, a reasonable officer would have reason to believe that it was practicable for Williams to stop his car to switch drivers somewhere other than on Highway 41.

Williams's final argument is that no probable cause existed to arrest him under this statute because he was "disabled." Illinois law provides that 625 ILL. COMP. STAT. 5/11-1301(a) "shall not apply to the driver of any vehicle which is disabled in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the vehicle in such position." 625 ILL. COMP. STAT. 5/11-1301(c). This section clearly exempts a "*vehicle* which is disabled," not a disabled driver of a vehicle as Williams argues. *See id.* (emphasis added). This argu-ment therefore is unavailing.

Having found that a reasonable officer on the scene would have probable cause to believe Williams had violated 625 ILL. COMP. STAT. 5/11-1301(a), the only remaining issue is whether this was an offense for which Williams could be arrested. The Supreme Court has made clear that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Largo Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001) (affirming the custodial arrest of a woman when probable cause existed that she had violated a Texas statute requiring the wearing of seatbelts); *Chortek v. City of Milwaukee*, 356 F.3d 740, 745 (7th Cir. 2004) ("Arrest for a minor, non-jailable offense does not violate the Fourth Amendment."). Therefore, because the facts known to Officer Rodriguez, when viewed objectively, would have provided a reasonable officer with probable cause to believe Williams had violated 625 ILL. COMP. STAT. 5/11-1301(a), it was within his authority, without violating the Fourth Amendment, to arrest Williams for that violation. Due to the objective nature of the probable cause analysis, it is of no consequence that Officer Rodriguez's subjective reason for making the arrest was driving under the influence rather than a violation of 625 ILL. COMP. STAT. 5/11-1301(a). Therefore, the district court properly granted summary judgment for Defendant Rodriguez on this count.

## B. Deliberate Indifference to Medical Needs

Williams complaint included a claim pursuant to § 1983 that Officer Rodriguez and an unknown and unnamed officer had violated his Fourth, Eighth, and Fourteenth Amendment rights by denying him treatment for his asthma. At summary judgment, Williams limited his

claim to one of deliberate indifference to medical needs pursuant to the standard applied under the Eighth Amendment. Although the Eighth Amendment only applies to convicted prisoners, this court has previously stated that the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause. *See Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003) ("The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, [Plaintiff] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment."); *see also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002) ("when considering a pretrial detainee's claim of inadequate medical care, we frequently turn to the analogous standards of Eighth Amendment jurisprudence"). Under this standard, "plaintiff has the burden of showing that (1) the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to [his] health or safety." *Cavalieri*, 321 F.3d at 620. Defendants do not address the second element of this standard in their brief and instead solely argue that Williams's harm was not objectively serious.

A medical condition is deemed to be objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Henderon v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997)). This court has found that "asthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005); *see Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("Asthma, depending upon its degree, can be a serious medical condition."). Defendants' claim for summary judgment

therefore, depends upon whether Williams was suffering from a sufficiently severe asthma attack the night he was arrested. In *Farnham*, we found that the plaintiff's asthma constituted a severe medical condition for purposes of surviving summary judgment when there was testimony that the air quality in jail caused the plaintiff to be taken to the emergency room on two occasions, forced him to begin using a breathing machine, and that when deprived of his asthma medication, the plaintiff would sometimes go into an attack that would leave him, as he described it, "almost frickin' dead" in the morning. *Farnham*, 394 F.3d at 484-85. Here, although Williams has been diagnosed with chronic asthma and it has been severe enough at times to require trips to the emergency room, according to Williams's medical records, his night under arrest did not necessitate an immediate, independent trip to the emergency room. Furthermore, our inquiry into the severity of Williams's asthma attack is limited to his time in processing, since Williams has failed to name a proper defendant for the period of his detention spent in lockup.

Williams brought this deliberate indifference claim against Officer Rodriguez and an unknown and unnamed Chicago police officer. In his complaint, Williams stated that he would seek leave to amend his complaint once he learned the identify of this unknown and unnamed defendant. Discovery was Williams's opportunity to identify this defendant, and he failed to do so before discovery closed on August 18, 2006. Due to Williams's failure to identify this defendant and the lack of any record that this individual was served with process, the district court's grant of summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.

Officer Rodriguez then, is the only proper defendant for Williams's deliberate indifference claim. Therefore, the

analysis for this claim is limited to determining whether Williams's asthma was objectively serious during the period of time he was with Officer Rodriguez. Williams concedes that there was no evidence he had a serious medical need at the scene of his arrest. Instead, the sole question is whether Williams's asthma was objectively serious during processing. The evidence does not reflect that Williams was suffering from a sufficiently severe asthma attack at that time. Williams's first mention of his asthmatic condition occurred when Officer Rodriguez asked him to take a breathalyzer test. It was at this point that Williams told Officer Rodriguez that he had asthma, "needed [his] medication," and "can't breathe." These statements, when arising in the context of a request for Williams to take a breathalyzer test, are insufficient by themselves to show that Williams was suffering from a serious asthma attack. At no other point during processing did Williams affirmatively request his inhaler or any medical attention from Officer Rodriguez or any of the other officers present. Williams responds to this, stating that his silence during processing was due to his focus on trying to control his breathing. While Williams's explanation for his silence is evidence that he was suffering from asthmatic symptoms, this also indicates that during processing, Williams's asthma was not so severe that he was unable to control his breathing without immediate medical assistance. In addition, aside from Williams's attempt to control his breathing, there is no evidence in the record showing that Williams was exhibiting physical symptoms reflective of an asthma attack while in processing. Furthermore, although Williams's wife and brother put Officer Rodriguez on additional notice of Williams's asthma when they gave Officer Rodriguez Williams's inhaler, there is no evidence that they told Officer Rodriguez that Williams was in immediate need of his inhaler due to a current asthma

attack. Thus, the facts, when viewed in the light most favorable to Williams, fail to show that his asthma was sufficiently severe during processing to be considered objectively serious for purposes of his deliberate indifference claim against Officer Rodriguez.

Although Williams's deliberate indifference claim fails under the Fourteenth Amendment analysis, it is worth noting that while this suit was before the district court, this court recognized in *Lopez v. City of Chicago* that the Fourteenth Amendment's due process protections only apply to a pretrial detainee's confinement conditions after he has received a judicial determination of probable cause. *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Claims regarding conditions of confinement for pretrial detainees such as Williams, who have not yet had a judicial determination of probable cause (a *Gerstein* hearing), are instead governed by the Fourth Amendment and its objectively unreasonable standard. *Id*. The *Lopez* decision came out nearly two months before the district court granted defendants' summary judgment motion in this case, and Williams has waived any Fourth Amendment claim by failing to amend or supplement his motion for summary judgment or raise the issue on appeal.

Without offering any opinion as to whether Williams's deliberate indifference claim would have been successful under a Fourth Amendment analysis, we do note that the deliberate indifference standard under the Eighth and Fourteenth Amendments requires a higher showing on a plaintiff's part than is necessary to prove an officer's conduct was "objectively unreasonable under the circumstances." *Id*. at 720. What is "objectively unreasonable" in the context of a medical needs case has been further clarified by this court in *Sides v. City of Champaign,* 496 F.3d 820 (7th Cir. 2007). In that case, the plaintiff was ordered out of his vehicle by police and made to stand

against the fender of his car, which was hot, on a ninety degree day for approximately one hour. *Id.* at 823. This led the plaintiff to complain to the officers of dizziness, dehydration, and soreness, but the officers did not permit the plaintiff to move. *Id.* The reasoning underlying this court's determination that the officers did not violate the plaintiff's Fourth Amendment rights implicitly identified four factors that are relevant for ascertaining whether a defendant's conduct was objectively unreasonable. *See id.* at 827-28. The first is that the officer be given notice of the arrestee's medical need, whether by word as occurred in *Sides,* or through observation of the arrestee's physical symptoms. *Id.* at 823, 828. Second, the court in *Sides* considered the seriousness of the medical need, in that case noting that the plaintiff's complaints were not accompanied by any physical symptoms. *Id.* at 828. The severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendment. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment. In *Sides* for example, the court noted that the plaintiff was partially responsible for his lengthy detention outdoors, since he insisted that the officers not charge him at all, rather than requesting that the officers take him to the station house or write him a citation immediately. *Id.* Finally, police interests also factor into the reasonableness determination. This factor is wide-ranging in scope and can include administrative, penological, or investigatory concerns. *Sides* reflected the latter of these interests, with the court emphasizing the importance of an on-site investigation and noting that the officers did not prolong the plaintiff's detention once this investigation was completed. *Id.* Again, we offer no opinion as to whether defendants'

conduct violated Williams's Fourth Amendment rights under this multi-factor analysis, but for the reasons discussed above, Williams has failed to meet the higher burden of showing that Officer Rodriguez was deliberately indifferent to an objectively serious medical condition.

## C.  Supplemental State Claims

Having disposed of Williams's federal claims, we are left only with his supplemental state claims of malicious prosecution and willful and wanton denial of medical care. As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). This rule however, is subject to three recognized exceptions: when the refilling of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided. *Wright*, 29 F.3d at 1251-52; *Williams Electronics Games*, 479 F.3d at 906-07. Although discovery in this case has been completed and thus judicial resources have already been expended to some degree, our reasoning with respect to Williams's federal § 1983 claims did not reach issues fully dispositive of Williams's pendant state claims. *See Wright*, 29 F.3d at 1251 ("If the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court.").

With respect to Williams's malicious prosecution claim, it is well-established that the existence of probable cause is a complete defense to such a claim. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 926 (7th Cir. 2001) (citing *Cervantes v.*

*Jones*, 188 F.3d 805, 810-11 (7th Cir. 1999)); *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Unlike the district court however, we have disposed of Williams's false arrest claim without needing to address whether probable cause existed to arrest Williams for the offenses for which he was prosecuted. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("In deciding an appeal, we may affirm the district court's grant of summary judgment on a ground other than that relied upon by the district court below, so long as the alternative basis finds adequate support in the record."). Because we have not determined whether Officer Rodriguez lacked probable cause to arrest Williams for driving under the influence or obstruction of traffic, an essential element of an Illinois malicious prosecution claim, *see Reynolds v. Menard, Inc.,* 850 N.E.2d 831, 837 (Ill. App. Ct. 2006), we modify the district court's grant of summary judgment for defendants on this claim to a dismissal for lack of jurisdiction.

Williams has also brought a state claim against all defendants for failure to provide him with medical care. Illinois's Local Governmental and Governmental Employees Tort Immunity Act provides that as a general matter, "[n]either a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody . . ." 745 ILL. COMP. STAT. 10/4-105 (2004). This immunity however, does "not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care." *Id.* This court has held that the "willful and wanton [standard] is 'remarkably similar' to the deliberate indifference standard." *Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001)

(citing *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1041 n.13 (7th Cir. 1998)).

With respect to Williams's claim under 745 ILL. COMP. STAT. 10/4-105 against Officer Rodriguez, our decision on Williams's federal deliberate indifference claim is dispositive of this issue. Although Officer Rodriguez did not argue whether he was subjectively deliberately indifferent to Williams's medical need, and thus similarly, does not apparently contest whether he subjectively acted willfully and wantonly, our reasoning that Williams's medical condition was not objectively serious similarly reflects that Officer Rodriguez did not know that Williams was in immediate need of medical care. As discussed above, Williams's statement that he had asthma, couldn't breathe, and needed his medication was made in response to Officer Rodriguez's request that Williams take a breathalyzer test, and thus does not, in context, reflect that Williams needed immediate medical care. Furthermore, Williams never requested at any other time that Officer Rodriguez provide him with his inhaler or take him to a hospital. In addition, although Williams's wife gave Officer Rodriguez Williams's inhaler, she never conveyed that Williams needed his inhaler because he was currently suffering from asthmatic symptoms. In fact, there is no evidence in the record indicating that Williams, aside from his efforts to minimize his talking to control his breathing, was exhibiting any physical symptoms of an asthma attack during processing. We therefore conclude that Officer Rodriguez did not know that Williams was in need of immediate medical care and thus affirm the district court's grant of summary judgment as it relates to Officer Rodriguez on this claim.

The City of Chicago's liability under this section is premised on its vicarious liability for the actions of its employees. 745 ILL. COMP. STAT. 10/4-105. Therefore, because we have affirmed the district court's grant of

summary judgment on this claim for Officer Rodriguez, we similarly affirm summary judgment for the City of Chicago as it relates to its vicarious liability for Officer Rodriguez's conduct. The same however, does not apply to the City of Chicago's vicarious liability for the unnamed and unknown defendant or other City employees. First, for the same reasons we dismissed Williams's deliberate indifference claims against the unnamed and unknown defendant, the district court's grant of summary judgment is similarly modified to dismiss this defendant on this state law claim. Dismissing this unnamed defendant from the suit however, does not necessarily absolve the City of Chicago of liability for that employee's actions. Indeed, the City of Chicago conceded this in its brief to this court. Under Illinois law, "it is sufficient for recovery against a public entity to prove that an identified employee would be liable even though that employee is not named a defendant in the action." *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994) (quoting *McCottrell v. Chicago*, 481 N.E.2d 1058, 1060 (Ill. App. Ct. 1985)). In *Gordon*, this court surmised that an unnamed officer assisting in an arrest was sufficiently identified for purposes of holding the municipality liable for his actions, before determining that this officer's actions were not willful or wanton. *Id.* For the same reason, our determination that the unnamed defendant is not himself a properly named defendant in this suit does not negate the City's potential liability for his conduct. Because we have not addressed the merits of Williams's deliberate indifference claim as it relates to his time in lockup, we decline to make this determination with respect to Williams's pendant state claim. We therefore modify the grant of summary judgment for the City of Chicago on this claim to a dismissal for lack of jurisdiction for all but the City's vicarious liability for Officer Rodriguez's conduct, which we affirm as a ruling on summary judgment.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the grant of summary judgment in favor of Defendant Officer Rodriguez on all claims but that for malicious prosecution, which we MODIFY to a dismissal for lack of jurisdiction. We also MODIFY the grant of summary judgment in favor of the unknown and unnamed Defendant on all counts to a dismissal of that party from this lawsuit. With respect to the City of Chicago, we MODIFY the grant of summary judgment in its favor on both state law claims to a dismissal for lack of jurisdiction, with the exception of the district court's grant of summary judgment for the City for its vicarious liability for Officer Rodriguez under 745 ILL. COMP. STAT. 10/4-105, which we AFFIRM. As so modified, this judgment is affirmed.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*