**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 16, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP954-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2023CM225

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

 PLAINTIFF-RESPONDENT,

V.

HOLLY J. GRIMSLID,

 DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for La Crosse County: SCOTT L. HORNE, Judge. *Affirmed*.

¶1 GRAHAM, J.[1] Holly Grimslid was arrested for operating a motor vehicle while intoxicated (OWI), and her blood was drawn pursuant to a warrant.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version.

Grimslid moved to suppress the results of the blood test on Fourth Amendment grounds because the officer refused her requests to use the bathroom for a period of time after the arrest. The circuit court denied the motion, and Grimslid was convicted of operating a motor vehicle with a prohibited alcohol concentration, second offense. Grimslid appeals her conviction, arguing that her motion should have been granted. I disagree and affirm the judgment of conviction.

## BACKGROUND

¶2      One night in March 2023, an officer noticed a vehicle that was being operated without its headlights illuminated, and further observed that the driver incorrectly signaled a turn. The officer stopped the vehicle, which was driven by Grimslid, after it pulled into a parking lot. As the officer questioned Grimslid, she admitted to having "probably two drinks." She spoke with slurred speech and contradicted herself, and the officer detected an odor of intoxicants coming from inside her vehicle.

¶3      The officer asked Grimslid to exit the vehicle and participate in field sobriety testing. Grimslid exited the vehicle, but appeared to be unsteady on her feet and did not consistently follow the officer's directions. The officer stopped field sobriety testing and arrested Grimslid. He placed Grimslid in the back of his squad car and drove to the Mayo hospital where her blood could be drawn and later tested for alcohol content.

¶4      Outside the hospital, and pursuant to Wisconsin's implied consent law, the officer read the "Informing the Accused" form to Grimslid. The form explained, among other things, that Grimslid would be subject to penalties if she refused to submit to a blood test. *See* WIS. STAT. § 343.305(4). The officer gave Grimslid several opportunities to consent to testing, but her initial responses were

2

conditional and equivocal. The officer said, "it's a yes or no question," and he told Grimslid that if she did not answer, "it's gonna be a refusal." When, for a final time, the officer asked Grimslid whether she would submit to a blood test, she responded:

> Uh, I will [pause] no, I'll, you can take me into Mayo. Take me into Mayo right now. I would wonderfully go into May—Mayo right now. And, yeah, I would love to. Let's go. Let's go to Mayo right now.

The officer later testified that he understood Grimslid's responses to mean that she was not consenting to testing.

¶5 The officer then began to prepare an application for a warrant to draw Grimslid's blood. Meanwhile, Grimslid remained handcuffed in the back of the squad car.

¶6 As the officer finished preparing the application, Grimslid asked to use the bathroom, and the officer responded, "No, not until I'm done." Grimslid repeated her request several times as the officer waited for the warrant application to be approved. The officer did not always respond, but when he did, he repeated that she could use the bathroom after "this process is done." In total, it took more than forty minutes for the warrant application to be approved.

¶7 After the warrant application was approved, the officer escorted Grimslid into the hospital for a blood draw. Inside the hospital, Grimslid again asked to use the bathroom several times, and the officer responded that she could use the bathroom when they "get down to the jail." After Grimslid's blood was drawn at the hospital, she was transported to the jail, where she was presumably allowed to use the bathroom.

3

¶8      The State filed a complaint that charged Grimslid with, among other things, operating a motor vehicle with a prohibited alcohol concentration and while under the influence of an intoxicant, both as second offenses.[2]

¶9      Grimslid filed several pretrial motions, including a motion to suppress the results of the blood test. In her motion, Grimslid alleged the arresting officer violated the Fourth Amendment's reasonableness requirement when he "denied [her] the basic human right to relieve herself." Grimslid asked the court to suppress the results of the blood test on that basis.

¶10     Following an evidentiary hearing, at which the arresting officer testified and his body camera footage was admitted into evidence, the circuit court denied Grimslid's motion. In so doing, the court acknowledged that some aspects of the body camera footage were cringeworthy, and speculated that perhaps more could have been done to allow Grimslid to use the bathroom while at the same

---

[2] In a separate civil proceeding, La Crosse County Case No. 2023TR692, the State sought to revoke Grimslid's operating privileges on the ground that she refused the officer's request to submit to a blood test. *See* WIS. STAT. § 343.305(9)(a) (addressing refusal proceedings). The transcript of the refusal hearing was included as a supplement to the appellate record in this criminal case. In that transcript, the circuit court determined that Grimslid's final response to the officer's request "lack[ed] some clarity," but that under the circumstances, the court was "not able to find that the State ha[d] met its burden of proof of establishing that there was in fact a refusal." *See* § 343.305(9)(a)5.c. (allowing a person to challenge, during a refusal hearing, whether "[t]he person refused to permit the test").

Later, during its oral decision in this criminal case, the circuit court characterized its prior determination at the refusal hearing as an affirmative finding that Grimslid consented to the search. I question that framing, and I further question whether a determination that the State failed to satisfy its burden of proof on refusal is equivalent to a finding that a person in fact consented to testing, such that a warrant would not have been constitutionally required to draw her blood. *See State v. Artic*, 2010 WI 83, ¶30, 327 Wis. 2d 392, 786 N.W.2d 430 (addressing the factual and legal requirements for voluntary consent). However, I need not address the issue further because it is undisputed that, whether due to the warrant that the officer obtained or Grimslid's alleged consent, there was a constitutional basis for the blood draw.

4

time "safeguard[ing] the integrity of the [blood] sample that was about to be obtained." However, the court determined, there was a "lack of nexus between" the officer's denial of Grimslid's requests to use the bathroom and the lawful basis for the blood draw. Although the court could envision a situation in which a person might consent to a blood draw based on an urgent need to use the bathroom, that was not what had happened in Grimslid's case.[3]

¶11 Following the denial of her pretrial motions, Grimslid pled guilty to one count of operating a motor vehicle with a prohibited alcohol concentration, second offense, and the circuit court entered a judgment of conviction. Grimslid appeals.

## DISCUSSION

¶12 The review of an order granting or denying a suppression motion presents a question of constitutional fact. *State v. Johnson*, 2013 WI App 140, ¶6, 352 Wis. 2d 98, 841 N.W.2d 302. On appeal, I will uphold a circuit court's findings of fact unless they are clearly erroneous, and I review de novo the application of constitutional principles to those facts. *Id.*

¶13 The Fourth Amendment protects against "unreasonable searches and seizures" by the government. U.S. CONST. amend. IV; *see also* WIS. CONST. art. I,

---

[3] On appeal, Grimslid points to comments that the circuit court made during the refusal hearing about the lapse of time before Grimslid was allowed to use the bathroom, and she asserts that the court "found that [the officer] acted in violation of the Fourth Amendment." This assertion mischaracterizes the court's comments and the record. Although the court speculated that more could have been done to allow Grimslid to use the restroom, it declined to weigh in on whether the officer's actions violated the Fourth Amendment because, it determined, she would not be entitled to the remedy of suppression even if she was able to prove a constitutional violation.

§ 11 (providing similar protections). Pursuant to the exclusionary rule, evidence obtained in violation of the Fourth Amendment may be suppressed as a consequence of the unconstitutional search or seizure. ***State v. Dearborn***, 2010 WI 84, ¶15, 327 Wis. 2d 252, 786 N.W.2d 97.

¶14 Accordingly, to demonstrate that the blood test results should have been suppressed, Grimslid must first demonstrate that she was subject to an unconstitutional search or seizure. However, Grimslid fails to show she was unconstitutionally searched or seized.

¶15 I begin with the law that governs the constitutionality of a seizure. Courts recognize two types of seizures: investigatory stops and "full-blown" arrests. ***State v. Young***, 2006 WI 98, ¶¶20-22, 294 Wis. 2d 1, 717 N.W.2d 729. An officer may detain a person in an investigatory stop based on reasonable suspicion;[4] and an arrest is constitutionally justified if it is supported by probable cause.[5] ***Id.*** Here, the officer had reasonable suspicion to stop Grimslid's vehicle after he observed Grimslid operating the vehicle without headlights and using an incorrect turn signal, and based on the officer's observations during the stop, he had probable cause to arrest Grimslid for an OWI offense. Indeed, during the circuit court proceedings, Grimslid expressly conceded that she was not challenging the basis for the investigatory stop or the subsequent arrest.

---

[4] "Reasonable suspicion requires that a police officer possess specific and articulable facts that warrant a reasonable belief that criminal activity is afoot." ***State v. Young***, 2006 WI 98, ¶21, 294 Wis. 2d 1, 717 N.W.2d 729.

[5] Probable cause requires that an arresting officer have sufficient knowledge at the time of the arrest to lead the officer to reasonably believe that the defendant "probably committed or was committing a crime." ***State v. Secrist***, 224 Wis. 2d 201, 212, 589 N.W.2d 387 (1999).

¶16 I now turn to the law that addresses the constitutionality of a search. When law enforcement collects a blood sample for chemical testing, it conducts a "search" for Fourth Amendment purposes. *Schmerber v. California*, 384 U.S. 757, 767 (1966). A search is constitutional if it is authorized by a warrant that complies with certain Fourth Amendment requirements.[6] *State v. Tate*, 2014 WI 89, ¶28, 357 Wis. 2d 172, 849 N.W.2d 798; *see also* *Birchfield v. North Dakota*, 579 U.S. 438, 474 (2016) (an officer must ordinarily obtain a warrant to obtain a blood sample incident to an OWI arrest). Here, the officer obtained a warrant authorizing the blood draw, and Grimslid does not challenge any aspect of the warrant. Therefore, she does not establish that she was subjected to an unconstitutional search.

¶17 Instead of arguing that the search or seizure was unconstitutional, Grimslid argues that the blood test results must be suppressed based on the conditions that she was subjected to after she was seized. More specifically, Grimslid cites several federal cases that stand for the premise that the Fourth Amendment may be violated by unreasonable conditions of confinement. *See* *Currie v. Chhabra*, 728 F.3d 626 (7th Cir. 2013); *Lopez v. City of Chicago*, 464 F.3d 711 (7th Cir. 2006), *abrogated on other grounds by* *Williams v. Dart*, 967 F.3d 625 (7th Cir. 2020); *Williams v. Rodriguez*, 509 F.3d 392 (7th Cir. 2007); *Flores v. Lackage*, 938 F. Supp. 2d 759 (N.D. Ill. 2013). She then argues that the

---

[6] A warrant satisfies Fourth Amendment requirements if it constitutes prior authorization by a neutral, detached magistrate; is based on a demonstration upon oath or affirmation that there is probable cause to believe that evidence sought will aid in a particular conviction for a particular offense; and contains a particularized description of the places to be searched and items to be seized. *State v. Sveum*, 2010 WI 92, ¶20, 328 Wis. 2d 369, 787 N.W.2d 317.

officer's refusal to allow her to use the bathroom made the conditions of confinement unreasonable, and that the proper remedy is to suppress the evidence.

¶18 I need not decide whether Grimslid has established a Fourth Amendment violation for purposes of resolving this appeal. Although these are not small assumptions in Grimslid's favor, I assume without deciding that the officer's refusal to allow Grimslid to use the bathroom made the conditions of her confinement objectively unreasonable, and might constitute a Fourth Amendment violation. Even with those assumptions, I conclude that Grimslid is not entitled to the remedy she seeks for two reasons.

¶19 First, Grimslid does not cite any authority to support the premise that suppression of evidence in a criminal case is an available remedy for unreasonable conditions of confinement. *See* ***Techworks, LLC v. Wille***, 2009 WI App 101, ¶27, 318 Wis. 2d 488, 770 N.W.2d 727 (an appellate court need not address arguments that are underdeveloped because they lack legal support). The conditions-of-confinement cases that Grimslid cites do not contemplate suppression as a remedy—instead, these cases address civil claims against the government, and they support the premise that unreasonable conditions of confinement may be remedied with monetary damages. *See* ***Currie***, 728 F.3d at 628-31; ***Lopez***, 464 F.3d at 717, 718-20; ***Williams***, 509 F.3d at 401-03; ***Flores***, 938 F. Supp. 2d at 763, 775-78.

¶20 Second, even if I were to assume that suppression could be an available remedy for unreasonable conditions of confinement, I would not impose that remedy here. The case law addressing the exclusionary rule specifies that there must be a connection between a Fourth Amendment violation and the evidence that a defendant is seeking to suppress. *See, e.g.*, ***Nix v. Williams***, 467

U.S. 431, 444 (1984) ("cases implementing the exclusionary rule 'begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity'" (citation omitted)). Here, Grimslid fails to establish any such connection. As mentioned, her blood was drawn pursuant to a lawful warrant, and the circuit court determined that there was no "connection between denial of the request to use the restroom and the [blood draw]." Grimslid makes no attempt to challenge this determination on appeal, and I agree with the circuit court that there is a lack of nexus between the officer's refusal to allow Grimslid to use the bathroom and the collection of the blood sample.

¶21 Accordingly, for all these reasons, I conclude that the circuit court did not err when it denied Grimslid's motion to suppress evidence.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.