In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3696

LINDA FLOREK,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF MUNDELEIN, ILLINOIS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 cv 6402—**Maria G. Valdez**, *Magistrate Judge*.

ARGUED JUNE 1, 2011—DECIDED AUGUST 16, 2011

Before FLAUM and SYKES, *Circuit Judges*, and CONLEY, *District Judge.**

FLAUM, *Circuit Judge.* When police searched her apartment and placed her under arrest during a drug raid, Linda Florek suffered a heart attack. She subsequently

---

* Hon. William M. Conley, Chief Judge of the Western District of Wisconsin, sitting by designation.

filed suit in federal court, naming as defendants the Village of Mundelein and several of its police officers. Donovan Hansen is the only such officer who remains in the case on appeal. Florek contends that police unreasonably seized her within the meaning of the Fourth Amendment by denying a request she made for baby aspirin and refusing to call an ambulance for her. She also maintains that police violated the Fourth Amendment's proscription against unreasonable searches by not giving her sufficient time to answer the door when they knocked and announced their presence prior to entering her apartment. (After waiting 15 seconds, police used a battering ram to gain entry.) On appeal, Florek contests the summary judgment ruling that eliminated one of her claims, the directed verdict ruling that eliminated the Village from the case, and the *in limine* ruling that barred one of her experts. We affirm.

## I. Background

In the fall of 2004, Village of Mundelein police officers using a confidential informant made two controlled buys of marijuana at or in front of an apartment located at 543 North Lake Street, in Mundelein. The apartment was the residence of Linda Florek. Her son resided there, too, and the person dealing drugs appears to have been one of the son's friends. Based on the controlled buys, police obtained a search warrant for the apartment. In the late evening hours of December 7, 2004, several officers, led by then-Sergeant Donovan Hansen, set out to execute the warrant.

That night, Florek arrived home from work shortly after 10:00 P.M. and settled in for the evening. She changed into a T-shirt, retired to the living room, and lit a marijuana cigarette. The last component of her evening's activities was unfortunately timed, as illegality literally lingered in the air when police executed their search at 10:22 P.M. According to the defendants, the search commenced when one of the officers knocked on the door to Florek's apartment and announced their presence, stating, "Police department, search warrant." The officers then waited approximately 15 seconds before breaching the door with a battering ram. Florek disputes the contention that officers announced their presence; all she heard were at least four impacts on her door before officers entered the premises.

As officers entered the apartment, Florek was standing in the middle of the living room. She was ordered to the ground and handcuffed. The apartment was redolent of marijuana and, when asked about the odor, Florek admitted that she threw a pouch of the substance behind the couch as the officers had arrived. She explained that a physician had previously advised her that she should smoke marijuana to reduce her blood pressure. Regardless of the statement's truth value, it only bolstered the probable cause police had to arrest her. *See also Russell v. Harms*, 397 F.3d 458, 466 (7th Cir. 2005) (distinguishing *Payton v. New York*, 445 U.S. 573 (1980), and holding that police executing a lawful search warrant may arrest a person inside the home, so long as the arrest is founded on probable cause). During the search, which lasted over an hour, Florek remained

handcuffed and was not allowed to change clothing. Florek's son was similarly restrained and brought into the living room. The son was admonished by his mother for inviting law enforcement attention by associating with a drug dealer.

Below (as on appeal), the chief dispute between the parties centered around whether police officers were unreasonable in responding to Florek's medical needs. Everyone agrees that early on during the execution of the search warrant Florek asked if she could take some baby aspirin. She made the request because roughly two years earlier she had suffered a heart attack. The paramedics who responded at that time had (among other things) given her four baby aspirins. According to Florek, the request for baby aspirin was denied outright. She then told officers that she wanted an ambulance because she was experiencing chest pains and having a heart attack. In response, she was told that an ambulance would be called if she still needed one after arriving at the police station.

The defendants tell it differently. According to Hansen, Florek did indeed ask for baby aspirin. He denied the request, following the Village police department's general orders which require physicians to administer medication. The relevant order also direct officers to summon paramedics in the event of an emergency. Hansen says he complied with the order, telling Florek in response to her request for aspirin that he would call for paramedics if she needed medical assistance. At that point, Florek responded, "This is bullshit," but did

not request an ambulance or let officers know she was having chest pains. Hansen also says that Florek did not appear to be under any more distress than would have been expected under the circumstances. And although she complained of shortness of breath at one point, the problem was resolved when she complied with Hansen's admonition that she slow down her breathing.

The search was completed shortly after 11:30 P.M. At around that time, Florek was allowed to get dressed, and she and her son were transported to the Village's police station. The transport vehicle was a Chevy cargo van equipped with interior partitions to separate prisoners. While being placed in the van, Florek says she pleaded, "Please don't put me in that cage. I am having a heart attack. I am claustrophobic." The defendants concede only that Florek protested the officers' choice of vehicle, telling her that she would be transported in the vehicle despite her displeasure. The defendants say that it was only after being placed in the van that Florek informed officers of her chest pains. One of the police officers, who was also a paramedic, spoke with Florek while she was in the van. The officer relayed what he learned to Hansen, the vehicle's driver. Hansen immediately radioed to have an ambulance meet them at the station. The rendezvous occurred within minutes.

The night's conclusion is subject to no real dispute. The paramedics treated Florek. Then, after administering baby aspirin and nitroglycerine and running

an intravenous line, the paramedics took her to the hospital. Hansen learned shortly thereafter that Florek had suffered a heart attack. He dispatched two officers to the hospital to complete Florek's processing, which consisted of fingerprinting and the posting of a recognizance bond. (Hansen directed the officers to consult with Florek's treating physician to learn if there was a medical reason not to finish the processing.) Florek was charged with possessing less than 2.5 grams of marijuana. She received supervision and paid a fine.

In November 2005, Florek filed suit in federal court. The case was referred to a magistrate judge for all purposes. *See* 28 U.S.C. § 636(c). The Village, Hansen, and several police officers were named as defendants, but Hansen is the only officer who remains. Just as the appeal has brought into focus which parties are critical in the case, it has winnowed the once-numerous claims. The ones that matter for our purposes are Florek's claims that (1) Hansen and the Village unreasonably seized her by denying her request for baby aspirin; (2) Hansen unreasonably seized her by refusing to call an ambulance when she first complained of chest pains; and (3) Hansen effected an unreasonable search when the officers he led failed properly to knock and announce their presence and did not wait a reasonable time before entering the apartment.

Hansen and the Village moved for summary judgment. The magistrate judge denied summary judgment on Florek's claim that Hansen unreasonably searched her apartment because of his team's alleged failure to properly

knock and announce its presence. The magistrate judge noted that there were simply disputed facts about whether police knocked, announced, and then waited a reasonable time before entering. As to Florek's claims that the defendants unreasonably seized her by not responding reasonably to her medical needs, the magistrate judge considered the claims separately. On the aspirin-based claim, the magistrate judge granted summary judgment on qualified immunity grounds, reasoning that there was no clearly established right to over-the-counter drugs during an arrest. Granting judgment to the Village on that basis was not appropriate, *see Owen v. City of Independence, Missouri*, 445 U.S. 622, 638 (1980) (holding that a "municipality may not assert the good faith of its officers or agents as a defense to liability under § 1983"), but Florek has not raised the error. (And we shall see that the error was harmless, because there was no constitutional violation.) In any event, the magistrate judge denied summary judgment on the ambulance-based claim. That claim proceeded to trial, along with the knock-and-announce claim.

After the close of Florek's case, the magistrate judge granted the Village's motion for a directed verdict, reasoning that Florek had not offered evidence sufficient to impute liability to the Village under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). The jury considered only the two claims against Hansen; brief deliberations produced a verdict in Hansen's favor. Florek appeals.

## II.  Discussion

On appeal, Florek takes no issue with the jury's verdict on the ambulance-based unreasonable seizure claim, but does challenge the magistrate judge's grant of summary judgment on the aspirin-based unreasonable seizure claim. She also maintains that the directed verdict in favor of the Village was improper, as was a decision by the magistrate judge to bar an expert witness's testimony on the knock-and-announce claim. We take up, and find wanting, each argument in turn.

### A.  Unreasonable Inattention to Medical Needs

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. We have held that an officer violates the prohibition on unreasonable seizures when, in the course of making an otherwise lawful arrest, he does not respond reasonably to an arrestee's medical needs. *Sides v. City of Champaign*, 496 F.3d 820, 828 (7th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 394-95 (1989), and holding that the Fourth Amendment's ban on unreasonable seizures applies to claims of unreasonable inattention to medical needs at the time of arrest). Not every constitutional violation will furnish a plaintiff with a basis for recovery, however. Qualified immunity will shield an officer from money damages unless a plaintiff establishes that the officer violated a right that was clearly established. *Pearson v. Callahan*, 555

U.S. 223, 231 (2009). And because "[l]evel of generality is destiny" in law, *see Thomas More Law Center v. Obama*, ___ F.3d ___, 2011 WL 2556039, at *27 (6th Cir. June 29, 2011) (Sutton, J., concurring), it bears emphasizing that courts should not decide that a right is clearly established at a high level of abstraction: we look to "whether the violative nature of *particular conduct* is clearly established." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (emphasis added).

In this case, the magistrate judge determined that the defendants enjoy qualified immunity with respect to Hansen's denial of Florek's request for baby aspirin. We review that determination de novo. *Hill v. Coppleson*, 627 F.3d 601, 605 (7th Cir. 2010). The analysis comprises two questions (*Pearson* teaches that we may take them up in any order; formerly we had to answer them in sequence. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001)). First, we ask whether the plaintiff's allegations make out a deprivation of a constitutional right. Second, we ask whether that right was clearly established at the time of the defendant's alleged misconduct. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). If the answer to either question is no, the officer is immune from suit. Here, the magistrate judge answered no to the second question. We answer no to the first question and hold that, as litigated by the parties, there was no genuine issue of material fact on the claim that police acted unreasonably by denying aspirin to Florek.

We say "as litigated by the parties," because everyone conceived of the case as having presented two discrete

unreasonable seizure claims: (1) whether police acted unreasonably by denying her request for baby aspirin, an issue which dropped out of the case at summary judgment; and (2) whether police acted unreasonably by refusing to call an ambulance, an issue which went to the jury and was resolved in Hansen's favor. These contentions ought to have been presented to the jury as a single claim—namely, whether police violated Florek's constitutional rights by failing to respond reasonably to her medical needs. After all, a claim is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Original Ballet Russe v. Ballet Theater*, 133 F.2d 187, 189 (2d Cir. 1943) (Swan, J.); *see also Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 743 & n.4 (1976) (intimating that a claim is a single legal theory "applied to only one set of facts" but not "attempt[ing] any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the [Federal] Rules"); *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 321 (1927) ("A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show."). And because the reasonableness of a seizure depends on the totality of the circumstances, *see Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); *Segura v. United States*, 468 U.S. 796, 806 (1984), determining whether police responded reasonably to an arrestee's medical needs demands the same inquiry. In that vein, *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007), distilled non-exclusive factors that courts might look to in evaluating whether a given police response was reasonable. Reasonableness in light of the totality of the circumstances remains

the constitutional touchstone in this realm. *See Lopez v. City of Chicago*, 464 F.3d 711, 718 (7th Cir. 2006).

If one concludes, as we have little difficulty doing below, that police would have responded reasonably to Florek's medical needs by calling paramedics (the basis of one "claim")—regardless of whether she was allowed to take aspirin (the basis of another "claim")—it carries the tacit acknowledgment that the "aggregate of operative facts" presented one claim all along. *Cf. also Gen. Acquisition, Inc. v. GenCorp.*, 23 F.3d 1022, 1029 (6th Cir. 1994) (discussing Federal Rule of Civil Procedure 54(b)). Law enforcement addressing an arrestee's medical needs will either procure treatment, provide treatment, or both. The circumstances should be considered together. However, because the parties and magistrate judge de-linked the issue of the treatment that Florek requested from the steps that officers took in response to her medical needs (and even on appeal Florek does not claim that this was error), we will do the same.[1]

---

[1] The implication of the discussion above, however, is that summary judgment should have been denied on a single unreasonable inattention to medical needs claim, rather than just denied with respect to an ambulance-based claim. Had summary judgment been denied, Hansen's refusal to provide aspirin would have been but one fact for the jury to consider. How much and what type of evidence to present on the denial-of-aspirin issue was a matter that would have been within the sound discretion of the trial court. And in the event the existence of a critical fact would have been

(continued...)

Therefore, we ask only whether there was a genuine issue of material fact on Florek's unreasonable seizure claim, assuming that officers called paramedics after having been alerted to her chest pains.

With that caveat, summary judgment was proper in this case. The result is dictated by a straightforward application of the factors we highlighted in *Williams*. There, we identified four factors that courts might look to in evaluating whether an officer's response to an arrestee's medical needs was reasonable. The factors are (1) "notice of the arrestee's medical need . . . whether by word . . . or through observation of the arrestee's physical symptoms"; (2) "the seriousness of the medical need"; (3) "the scope of the requested treatment," which is balanced against the seriousness of the medical need; and (4) police interests, a factor which "is wide-ranging in scope and can include administrative, penological, and investigatory concerns." *Williams*, 509 F.3d at 403.

One should not fixate on factors, however: the intuitive, organizing principle is that police must do more to satisfy the reasonableness inquiry when the medical condition they confront is apparent and serious and

---

[1] (...continued)
dispositive in the case—such as a timely call to paramedics—a special verdict form could have been used to ensure the proper outcome. On these facts, however, Florek should not bemoan her loss at summary judgment. As explained below, if police did promptly summon paramedics, they acted reasonably in this case.

the interests of law enforcement in delaying treatment are low. That is not the situation here. As to the first factor, officers had knowledge of the request for baby aspirin, but did not know that Florek was experiencing chest pains, and her outward appearance did not put officers on notice of her medical condition. (Again, the way the parties presented the issue leads us to hold to one side Florek's contention that she did tell officers she was experiencing chest pains and requested an ambulance.) Although her breathing was rapid at one point, Hansen's advice to take slower breaths appears to have been effective. Moreover, Florek was conversing at the scene, admonishing her son for his association with a drug dealer. In short, law enforcement were not on notice of a serious medical condition. The request for baby aspirin was minor in scope as treatments go, but the weight of this factor is substantially reduced by the fact that the medical need did not appear to be great. Our case law does not require police officers to alleviate all discomfort or distress associated with arrest. *Sides*, 496 F.3d at 828 ("[T]he Constitution does not require arrests to be conducted in comfort."). As to the fourth factor we identified in *Williams*, police had a valid interest in denying the request for aspirin. Although the police appear to have quickly brought the arrest scene under control, they were executing a search warrant for illegal narcotics, and they had no way of knowing if a particular medication was in fact what it purported to be. (The same conclusion might not apply to an arrestee's request to take prescription medication in accordance with the instructions on the bottle,

as the containers for prescriptions describe the proper appearance of the pill and the symptoms that trigger their use.)

Finally, and although we did not explicitly say as much in *Williams* or in *Sides*, the Fourth Amendment reasonableness inquiry necessarily takes into account the sufficiency of the steps that officers did take. "Just as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1098 (9th Cir. 2006) (citations omitted); *see also Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (the Constitution is not a medical code requiring officers to administer or allow specific treatments); *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (contrasting a reasonable response with a plaintiff's preferred response, in the context of an Eighth Amendment claim). Here, we have assumed that an ambulance was called promptly after officers were notified that Florek was experiencing chest pains and wanted an ambulance. That action will typically qualify as reasonable. *See Tatum*, 441 F.3d at 1099 (police acted reasonably when they promptly summoned necessary medical assistance, even if they did not administer CPR); *see also Sallenger v. City of Springfield, Illinois*, 630 F.3d 499, 504 (7th Cir. 2010) (police acted reasonably when they promptly summoned necessary medical assistance and administered CPR).

Florek points to no case where a court has held that police acted unreasonably when they summoned emergency medical personnel instead of supplying non-prescription medication to an arrestee, nor has she pointed to other authority that might help her in making the argument. We located no helpful authority on her behalf, and a straightforward application of our precedent militates against her position. Thus, summary judgment on the merits was appropriate as to Hansen, and that means that judgment for the Village was proper as well. *Sallenger*, 630 F.3d at 505 (*Monell* liability cannot be imposed where there is no underlying constitutional violation).

**B. The Village's Motion for Directed Verdict**

We review de novo the magistrate judge's decision to grant the Village's motion for a directed verdict—which the Federal Rules of Civil Procedure refer to as judgment as a matter of law. *Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 379 (7th Cir. 2000); Fed. R. Civ. P. 50(a). "To avoid a directed verdict, the plaintiff must do more than argue that the jury might have disbelieved all of the defendant's witnesses. Rather, the plaintiff must offer substantial affirmative evidence to support her argument." *Heft v. Moore*, 351 F.3d 278, 284 (7th Cir. 2003).

At the close of Florek's case, the magistrate judge granted the Village's motion for a directed verdict, reasoning that the aspirin issue was no longer part of the litigation and that Florek had not presented evidence linking a municipal policy or custom to any constitutional

violation. On appeal, Florek concedes that a directed verdict was proper as to all but the claim related to aspirin. Having determined above that summary judgment was appropriate on the denial of aspirin issue, there remains no possible grounds for error.

## C. Rulings on Expert Testimony

Finally, Florek maintains that the magistrate judge erred by barring expert testimony on whether police acted unreasonably by waiting 15 seconds, after knocking and announcing their presence, before ramming open the door to her apartment. (She also contends that it was error to bar expert testimony on the denial of aspirin issue, but the issue was properly out of the case, and so we need say no more.) The testimony in question would have been offered by police expert Dennis Waller. Waller would have testified that, given the late hour at which the search was executed, "no rational, experienced officer would/could reasonably expect a response and voluntary compliance within fifteen seconds" of knocking and announcing his presence. The defendants' motion *in limine* maintained that the subject matter of Waller's testimony was adequately comprehensible by laypeople and therefore not properly admissible as expert testimony. The magistrate judge agreed.

We review de novo whether the magistrate judge "applied the appropriate legal standard in making its decision to admit or exclude expert testimony, and we review for abuse of discretion the . . . choice of factors to

include within that framework and . . . ultimate conclu-sions regarding the admissibility of expert testimony." *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 824-25 (7th Cir. 2010). Where the court below abuses its discretion by keeping out evidence that ought to have been admitted, a new trial will not be granted unless the omis-sion of such evidence violated the party's "substantial rights." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 608-09 (7th Cir. 2006); Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and de-fects that do not affect any party's substantial rights."). In order for expert testimony to be admissible, it must satisfy the Federal Rule of Evidence's threshold require-ment that "specialized knowledge . . . assist the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702. Once the threshold showing is made, experts may provide assistance on a very great deal: an opinion is not objectionable merely because "it embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a). Thus, there would be no problem with Waller's ultimate determination that police acted unrea-sonably. The question is whether the basis of that deter-mination—how long it takes for people to respond to law enforcement's knock at the door—was beyond the ken of the average layperson. *See* 4 Jack B. Weinstein & Margaret A. Berger, WEINSTEIN'S FEDERAL EVIDENCE ¶ 702.03[1], at 702-34 (Matthew Bender 2d ed. 2011).

Florek's brief does not cite case law on when expert testimony will help a jury determine whether police conduct is reasonable. The case of *Kopf v. Skyrm*, 993 F.2d 374 (4th Cir. 1993), proves instructive. In *Kopf*, the Fourth

Circuit held that a district court abused its discretion in excluding expert testimony about whether it was reasonable for police to use a canine officer (and its canines) in bringing a suspect to heel. The court noted that whether force is excessive depends on the "objective reasonableness" of the force used, a fact question. Yet, "any 'objective' test implies the existence of a standard of conduct, and, where the standard is . . . defined by . . . the specific— a reasonable *officer*—it is more likely that Rule 702's line between common and specialized knowledge has been crossed." *Id.* at 378. In the context of the case, which related to when police officers will find it necessary to use police dogs and certain specialized devices in gaining control over a suspect, the court ruled that the line had been crossed. However, the court noted that expert testimony might not be helpful in other situations, such as where police used their bare hands in making an arrest, the "most primitive form" of force. *Id.* at 379. In other words, expert testimony is more likely to satisfy Federal Rule of Evidence 702's requirement that it "assist the trier of fact to understand the evidence or determine a fact in issue" when something peculiar about law enforcement (*e.g.*, the tools they use or the circumstances they face) informs the issues to be decided by the finder of fact. *See United States v. Shedlock*, 62 F.3d 214, 219 (8th Cir. 1995). Of course, that does not mean that expert testimony can war with the pertinent legal standards at play. *Cf. Whren v. United States*, 517 U.S. 806, 815 (1996) (noting that certain police practices "vary from place to place and from time to time" and rejecting the view that constitutional protections are "so variable"). And when the testimony is about a matter of

everyday experience, expert testimony is less likely to be admissible. *United States v. Hanna*, 293 F.3d 1080, 1085-86 (9th Cir. 2002) (testimony of Secret Service agents on whether a reasonable person in the defendant's position would foresee that communications would be perceived as threatening the President was not beyond the understanding of the average layperson); *Beck v. City of Pittsburgh*, 89 F.3d 966, 975-76 (3d Cir. 1996).

Measuring Waller's testimony against these standards, there can be no doubt that the magistrate judge properly exercised her discretion in barring Waller's testimony. The knock-and-announce rule about which Waller would have opined is a factor to be considered when evaluating the reasonableness of a search. *See Wilson v. Arkansas*, 514 U.S. 927, 934 (1995). Informed by principles of English common law, *id.* at 932-33, the Court in *Wilson* held that the Fourth Amendment generally requires police, before forcibly entering someone's home, to seek voluntary compliance with a lawful warrant by knocking and announcing their presence, *id.* at 934. Despite the general rule, the Court noted that law enforcement interests may militate in favor of dispensing with it in certain circumstances. The Court highlighted concerns over destruction of evidence and danger faced by police officers in particular, but otherwise left it to lower courts to develop the law in this realm. *Id.* at 936-37.[2]

---

[2] Generally, we have refused to turn the knock-and-announce rule "into a constitutional stop-watch where a fraction of a

(continued...)

Plainly, the concerns highlighted by the Court will inform the determination about whether law enforcement have waited a reasonable time before gaining entry to a residence by force. It is self-evident that expert testimony may be useful on those subjects. How long does it take to dispose of drugs? What sorts of problems do law enforcement encounter the longer they wait before entering a residence? These are questions whose answers cannot be furnished by everyday experience. Waller's testimony, on the other hand, did not approach Rule 702 territory. It appears that Waller's chief contribution was going to be his belief that, given the late hour, it would have been unreasonable to expect voluntary compliance with a knock at the door in 15 seconds. Florek does not explain why expert testimony on this subject would be useful to the jury, instead seeming to contend that expert testimony is always necessary where "constitutional freedoms and guarantees are concerned" and police practices are at issue. That position is untenable; everyday experience teaches

---

[2] (...continued)

second assumes controlling significance." *United States v. Espinoza*, 256 F.3d 718, 722 (7th Cir. 2001). What is reasonable must be determined "under the particular factual situation presented." *Id.; see also United States v. Jones*, 208 F.3d 603, 610 (7th Cir. 2000) (upholding district court's determination that 5 to 13 seconds was reasonable where police had concerns that a suspect was armed and also "a lengthy period of time would give the defendant an opportunity to destroy the drug evidence").

people how long it takes to walk from room to room. The magistrate judge did not abuse her discretion in barring the testimony, nor did she do so by keeping out Waller's testimony that a reasonable police officer would call an ambulance if confronted with an arrestee known to be experiencing heart attack symptoms.

### III. Conclusion

For the reasons set forth above, the judgment of the district court is AFFIRMED.