**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 17a0418n.06**

**No. 16-2520**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 19, 2017
DEBORAH S. HUNT, Clerk

PATRICIA ESCH, as Personal,
Representative of the Estate of
Stephen Stiles,

      **Plaintiff-Appellant,**

v.

COUNTY OF KENT, MICHIGAN;
LAWRENCE A. STELMA; NASIM A.
YACOB, M.D.; CLAIRE EVERSON,
L.P.N.; CORIZON HEALTH, INC.;
and DORIS LEMMEN, L.P.N.,

      **Defendants,**

**&**

DAVID SOVA, D.O.; JIM MCFADDEN,
R.N.; MINERVA BOOKER, R.N.; and
ESTHER WEST, R.N.

      **Defendants-Appellees.**

_____/

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

**BEFORE:**    **SILER, CLAY, and McKEAGUE, Circuit Judges.**

      **CLAY, Circuit Judge.** Plaintiff Patricia T. Esch ("Plaintiff"), the personal representative of the Estate of Stephen Stiles, appeals from the judgment entered by the district court on September 27, 2016, granting summary judgment to Defendants Jim McFadden, R.N., Esther West, R.N., Minerva Booker, R.N., and David Sova, D.O. (collectively, "Defendants"). Stephen Stiles ("Stiles") died of a seizure shortly after he was taken into custody on an outstanding warrant for failure to pay child support. Defendants are medical officials at the county jail where

Stiles was being detained. Plaintiff alleges that Defendants caused Stiles' death through their failure to give him his anti-seizure medication in a timely manner. The district court granted Defendants' motions for summary judgment, reasoning that there was no evidence suggesting that Defendants were deliberately indifferent to Stiles' serious medical needs. Plaintiff asks us to reverse the district court's grant of summary judgment, and remand her claims for trial. We have subject matter jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

For the reasons set forth below, we **AFFIRM** the district court's judgment.

## BACKGROUND

### I. Factual History

On May 31, 2011, at approximately 4:48 a.m., the Grand Rapids Police Department arrested Stiles on an outstanding warrant for failure to pay child support. Stiles was taken for holding at the nearby Kent County Correction Facility ("the jail").

Once Stiles arrived at the jail at approximately 4:55 a.m., he was taken to a medical intake screening conducted by Defendant Jim McFadden ("Nurse McFadden"). Nurse McFadden noted that Stiles suffered from epilepsy, grand mal seizures, and hypertension, and was also under the influence of alcohol, which can exacerbate the risk of seizures. Stiles also told Nurse McFadden that he had suffered a serious seizure two weeks prior to his arrest. Stiles provided nurse McFadden with the name of his treating physician and a phone number for his pharmacy so that Nurse McFadden could verify Stiles' prescription for an anti-seizure medication known as Dilantin. Stiles was prescribed to take Dilantin twice daily—once in the morning, and once in the evening. At the time Stiles entered the jail, he had not taken his previous night's Dilantin dose, but Nurse McFadden failed to ask him when he had last taken his medication. Nurse McFadden entered Stiles' information into the jail's computer system, and then placed his chart in a stack for the next duty nurse to review. Nurse McFadden's shift ended sometime between 6:00 a.m. and 7:00 a.m.

The next nurse on duty was Defendant Esther West. Nurse West started her shift at roughly 6:00 a.m. and worked until roughly 2:30 p.m. At roughly 10:42 a.m., Nurse West called

Stiles' pharmacy and was able to verify his Dilantin prescription. After verifying the prescription and updating Stiles' chart, Nurse West apparently took no further actions to assure that Stiles received his Dilantin beyond placing the chart in a place where it would be viewed by a physician capable of issuing prescriptions.

At some time between 2:00 p.m. and 3:00 p.m., Stiles asked a guard to inquire how long it would be before he received his anti-seizure medication. The guard relayed the inquiry to an unidentified person in the jail's medical office.

At roughly 12:00 p.m., Defendant David Sova ("Dr. Sova") arrived for his shift as the attending physician at the jail. Dr. Sova's shift ran from 12:00 p.m. to 6:00 p.m., but Stiles' medical records reflect that his prescription for Dilantin was noted at 6:45 p.m. Dr. Sova testified during his deposition that one of the nurses on call should have identified Stiles as a must-see patient because of his seizure condition. Nevertheless, after prescribing Dilantin to Stiles, Dr. Sova apparently took no further steps to assure that Stiles received his anti-seizure medication immediately.

From roughly 2:30 p.m. to 10:30 p.m., Defendant Minerva Booker ("Nurse Booker") took over for Nurse West as the nurse on call at the jail. Although Nurse Booker hypothetically would have received Stiles' chart in a stack of intake paperwork from Nurse West, there is no evidence in the record that Nurse Booker ever saw Stiles' chart, or was involved in his medical care in any way.

At 8:00 p.m., jail medical staff sent a cart around to deliver prescriptions to the inmates, including Stiles. At 8:18 p.m., when Stiles did not come to the cart or respond to a call made over the jail's loudspeaker system, jail staff approached his cell. Stiles was found unconscious therein. He was pronounced dead at 8:41 p.m. from a fatal seizure.

## II.    Procedural History

On May 2, 2013, Plaintiff brought suit on behalf of Stiles' estate in the Western District of Michigan, asserting claims pursuant to 42 U.S.C. § 1983 for: (i) *Monell*[1] liability against Kent County, the County Sheriff, and Corizon Health, Inc. (the jail's health care contractor) for failing to have adequate policies in place to assure that inmates with acute medical needs received prescription medication in a timely fashion; and (ii) individual liability against Dr. Sova and the numerous nurses that had worked in the jail on the day Stiles died.  The claims for individual liability alleged that the jail medical staff had been deliberately indifferent to Stiles' serious medical needs in violation of the Eighth and Fourteenth Amendments.

On March 24, 2016, after discovery, the various defendants in this suit moved for summary judgment against all of Plaintiff's claims.  On September 27, 2016, the district court granted the summary judgment motions in their entirety.  *Esch v. County of Kent*, No. 1:13-cv-478, 2016 WL 5387860, at *1 (W.D. Mich. Sept. 27, 2016).  The district court first determined that Kent County, the County Sheriff, and Corizon maintained policies requiring that inmates receive any valid prescriptions within 24 hours of intake, and that these policies were flexible enough in practice to permit inmates to receive medication sooner in emergency situations.  *Id.* at *2–4.  The district court determined that in this case, Stiles did not receive his medication until roughly fifteen hours after his intake because there was nothing in his chart to suggest that he was facing an acute medical emergency, and therefore dismissed Plaintiff's *Monell* claims.  *Id.* With respect to the various individual defendants, the district court concluded that while Stiles was definitely suffering from an objectively serious medical condition, and may have received deficient care, there was no evidence in the record that any defendant subjectively appreciated the risk to Stiles and chose to ignore it.  *Id.* at *4–7.  In brief, the district court found that each doctor and nurse did their part to advance Stiles' request for Dilantin, and he was ultimately

---

[1] *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978) (creating a framework for assessing § 1983 liability against local governments that cause harm through unconstitutional policies or practices).

prescribed the drug. *Id.* Although the jail medical staff perhaps should have taken steps to assure that Stiles received his Dilantin prescription more quickly, the district court concluded that there was no evidence that Defendants were subjectively aware of the need to act any faster than they did. *Id.*

The district court entered a judgment terminating all active claims on September 27, 2016. On October 27, 2016, Plaintiff filed a timely notice of appeal. Although there were a number of individual defendants named in Plaintiff's complaint, Plaintiff only presses her claims against Nurse McFadden, Nurse West, Nurse Booker, and Dr. Sova in this appeal.

## DISCUSSION

### I. Standard of Review

We review *de novo* the district court's grant of summary judgment. *See, e.g.*, *Kelly Servs., Inc. v. Creative Harbor, LLC*, 846 F.3d 857, 862 (6th Cir. 2017). A movant is entitled to "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When evaluating a summary judgment motion, the reviewing court must construe the facts in the light most favorable to the non-movant." *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). A "genuine issue of material fact exists when there is sufficient evidence for a trier of fact to find for the non-moving party." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

### II. Does the Fourth or the Fourteenth Amendment Govern Plaintiffs' Claims?

Plaintiff alleges that Defendants provided Stiles inadequate medical care during his brief time in custody. However, the parties dispute which constitutional amendment supplies the correct analytical framework for assessing Plaintiffs' claims: the Fourth Amendment or the Fourteenth Amendment. Plaintiff argues that the Fourth Amendment applies, while Defendants

argue that this case is governed by the Fourteenth Amendment. "This is not a purely academic question as the standards of liability vary significantly according to which amendment applies." *Lanman v. Hinson*, 529 F.3d 673, 679–80 (6th Cir. 2008). If the Fourth Amendment applies, we must evaluate whether Defendants' conduct was "objectively reasonable." *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010). Thus, Defendants' "subjective intentions are irrelevant to the Fourth Amendment inquiry." *Id.* However, if the Fourteenth Amendment applies, we must evaluate whether a jury could find that Defendants were deliberately indifferent to Stiles' serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference has both subjective and objective components, and requires proof that: (i) Defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed];" and (ii) Defendants actually drew that inference. *See, e.g.*, *Mattox v. Edelman*, 851 F.3d 583, 597 (6th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "The Fourth Amendment objective reasonableness test is an 'easier standard for [a] plaintiff to meet' than the Fourteenth Amendment deliberate indifference test." *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 419 (6th Cir. 2015) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001)).

In the context of excessive force claims, we have "held that '[w]hich amendment applies depends on the status of the plaintiff at the time of the incident, whether free citizen, convicted prisoner, or something in between.'" *Lanman*, 529 F.3d at 680 (quoting *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002)). "If the plaintiff was a convicted prisoner at the time of the incident, then the Eighth Amendment deliberate indifference standard sets the standard for an excessive force claim." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). "But if the plaintiff was a free person, and the use of force occurred in the course of an arrest or other seizure, then the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard." *Id.* (citing *Graham*, 490 U.S. at 395). If the plaintiff is a pretrial detainee who has had a probable cause hearing, the Fourteenth Amendment (and by extension, the Eighth Amendment's deliberate indifference standard) governs her claims. *Aldini*, 609 F.3d at 866.

Plaintiff argues that the extent of Stiles' rights was governed by the Fourth Amendment at the time of his death, because he had not had a probable cause hearing, and was thus akin to a free person. Defendants argue that Plaintiff waived any application of the Fourth Amendment because Plaintiff failed to raise that Amendment's potential application before the district court.[2]

We have never squarely decided whether the Fourth Amendment's objective reasonableness standard can ever apply to a plaintiff's claims for inadequate medical treatment. *See Boone v. Spurgess*, 385 F.3d 923, 934 (6th Cir. 2004) (noting the uncertainty regarding whether the Fourth Amendment applies to inadequate medical care cases, but declining to resolve the question); *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 n.3 (6th Cir. 2005) (same). The Seventh and Ninth Circuits have held that such claims are cognizable, *see, e.g.*, *Currie v. Chhabra*, 728 F.3d 626, 630 (7th Cir. 2013) (collecting cases); *Tatum v. City and County of San Francisco,* 441 F.3d 1090, 1099 (9th Cir. 2006), while the Tenth Circuit has held that all claims for inadequate medical care are governed by the Eighth Amendment's deliberate indifference standard. *See Barrie v. Grand Cty.*, 119 F.3d 862, 868–69 (10th Cir. 1997) ("[W]e conclude that in this circuit a prisoner, whether he be an inmate in a penal institution after conviction or a pre-trial detainee in a county jail, does not have a claim against his custodian for failure to provide adequate medical attention unless the custodian knows of the risk involved, and is 'deliberately indifferent' thereto."). We have implied in *dicta* that inadequate medical

---

[2] At oral argument, Defendants also argued that Stiles did in fact receive a probable cause hearing after his arrest, but before he was taken to the jail, and thus that Plaintiff's claims should be governed by the Fourteenth Amendment because Stiles was not akin to a free person. *Aldini*, 609 F.3d at 866. However, the record does not clearly delineate what judicial process, if any, Stiles received before being taken to the jail. And of course, representations made during oral argument are not part of the record, and are generally not sufficient to support a motion for summary judgment. *See, e.g.*, *EOTT Energy Operating Ltd. P'ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 999 (9th Cir. 2001) ("[S]tatements made by counsel at oral argument are not evidence and not part of the record."); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 n.4 (11th Cir. 1998) ("[A]ttorneys' statements at oral argument do not constitute record evidence[.]"); *see also* Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2723 n.2 (4th ed. Supp. 2017) (collecting cases for the proposition that oral testimony is sparingly considered on summary judgment motions). Accordingly, we will not consider Defendants' oral argument statements in adjudicating this appeal.

treatment claims are just as cognizable under the Fourth Amendment as excessive force claims. *Boone*, 385 F.3d at 934.

After carefully reviewing the record and the parties' arguments, we conclude that it is not necessary to decide whether the Fourth or the Fourteenth Amendment supplies the basis for Plaintiff's claims, because her claims fail under both the deliberate indifference and objective reasonableness standards. We will therefore assume *arguendo* that the Fourth Amendment's more forgiving objective reasonableness standard governs this appeal, because "behavior that does not rise to the level of a Fourth Amendment violation cannot offend the Fourteenth." *See Smith*, 603 F. App'x at 418–19 (adopting the same approach).[3]

As recited earlier, under the Fourth Amendment, Defendants may be liable for failing to provide Stiles adequate medical treatment if their treatment decisions were objectively unreasonable. *Aldini*, 609 F.3d at 865. As the Seventh Circuit has explained, in inadequate medical care cases,

> Four factors inform our determination of whether an [official's] response to [a plaintiff's] medical needs was objectively unreasonable: (1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. [*Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)]. [The plaintiff] must also show that the defendants' conduct caused the harm of which she complains. See *Gayton v. McCoy,* 593 F.3d 610, 620 (7th Cir.2010) . . . . "[T]he severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment." 509 F.3d at 403.

*Ortiz v. City of Chicago*, 656 F.3d 523, 530–31 (7th Cir. 2011). In performing this inquiry, we must review "the totality of the circumstances, analyzing the facts 'from the perspective of a reasonable [official in Defendants' position], rather than with the 20/20 vision of hindsight.'" *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001) (quoting *Graham*, 490 U.S. at 396).

---

[3] We express no view as to the broader legal question of whether inadequate medical care claims are ever cognizable under the Fourth Amendment.

## III.    Analysis

### A.    Nurse McFadden

Nurse McFadden handled Stiles' intake paperwork on the morning of his arrest.  After completing Stiles' intake questionnaire, Nurse McFadden knew that: (i) Stiles had a history of seizures, including a seizure two weeks prior; (ii) Stiles was on Dilantin to control those seizures; and (iii) Stiles was under the influence of alcohol upon intake, which increased his risk of a seizure occurring.  Nurse McFadden failed to ask when Stiles had last taken Dilantin, and also failed to personally follow-up to insure that Stiles received his medication.  Plaintiff argues that a jury could find this conduct objectively unreasonable because Nurse McFadden "knew everything necessary to provide [Mr.] Stiles with proper medical care," and did not.[4]  (App. R. 26, Appellant's Br., at 35.)

We disagree.  Although Stiles unquestionably suffered from a serious medical condition requiring treatment,[5] and informed Nurse McFadden of his Dilantin prescription, Nurse McFadden was not aware of any facts suggesting that Stiles could not wait for the jail to complete its ordinary prescription verification procedures.  During his intake procedures, there was no sign that Stiles was in any acute physical distress.  *See Florek v. Village of Mundelein*, 649 F.3d 594, 600 (7th Cir. 2011) (officers' failure to provide more aggressive medical care not unreasonable where "the medical need did not appear to be great"); *Legg v. Pappas*, 383 F.

---

[4] Plaintiff also alleges that Nurse McFadden deliberately chose not to give Stiles his Dilantin prescription because Stiles came to the jail near the end of Nurse McFadden's shift, and Nurse McFadden did not want to shoulder the responsibility of getting Stiles his medication.  We accord this argument no weight, because Plaintiff does not point to any evidence in the record that supports an inference that Nurse McFadden consciously chose not to provide Stiles additional medical care out of sloth or indolence.

[5] We reject Defendants' argument that Stiles was not suffering from an objectively serious medical condition.  A plaintiff can show that she suffers from an objectively serious condition for Eighth Amendment purposes by showing that she has an ailment "that has been diagnosed by a physician as mandating treatment." *Mattox*, 851 F.3d at 598 (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 897 (6th Cir. 2004)).  Stiles' seizure condition indisputably met this qualification, and if a condition is objectively serious for Eighth Amendment purposes, it is necessarily serious enough to require care for Fourth Amendment purposes as well. *Ortiz*, 656 F.3d at 530–31.

App'x 547, 551 (7th Cir. 2010) (failure to provide medical care not unreasonable where plaintiff "was not in serious medical need at the time" he was arrested). In fact, Stiles did not die until more than fifteen hours after he interacted with Nurse McFadden. Moreover, uncontested record evidence shows that Nurse McFadden noted Stiles' need for Dilantin on his chart, and followed jail procedures by turning Stiles' paperwork over to the day shift nurse (Nurse West) for verification. *See, e.g.*, *Moreland v. Roscko*, 254 F. App'x 361, 362 (5th Cir. 2007) (per curiam) (holding that "nurses' compliance with prison policy" was not "objectively unreasonable"). Nurse McFadden also called Stiles' pharmacy and left a message inquiring into the status of Stiles' Dilantin prescription. This was appropriate because prison medical staff generally must take additional steps to verify a prisoner's need for medication before dispensing it. *Florek*, 649 F.3d at 600 (officers' failure to provide medication reasonable where administrative concerns counseled in favor of delay, and the plaintiff's medical need did not appear to be great). In light of the facts known to Nurse McFadden during Stiles' intake, no reasonable jury could find that Nurse McFadden acted unreasonably.

Plaintiff additionally argues that a reasonable jury could accept the expert report offered by Valerie Tennessen, R.N., who opined that Nurse McFadden acted with deliberate indifference to Stiles' serious medical needs. We give this expert report very little weight. Nurse Tennessen's brief analysis was based on: (i) her assessment of Nurse McFadden's credibility; (ii) her belief that Nurse McFadden should have followed up with Stiles' pharmacy regarding his Dilantin prescription; and (iii) her opinion that Nurse McFadden should have issued Stiles Dilantin from the 24-hour pharmacy at his disposal. Expert witnesses are generally not permitted to base their conclusions on an evaluation of a witness's credibility, because credibility determinations are not an appropriate subject for expert testimony. *See, e.g.*, *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999); *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014). Further, Nurse McFadden's failure to follow-up with Stiles' pharmacy was not unreasonable—Nurse McFadden's shift ended very early in the morning, before most pharmacies would be open, and Nurse West (the next nurse on duty) followed up with the

pharmacy a few hours later. Finally, because Stiles did not appear to be in any acute medical distress, it was not unreasonable for Nurse McFadden to follow the jail's prescription verification procedure rather than seeking an emergency prescription from a 24-hour pharmacy.

We likewise decline to give significant weight to Plaintiff's other experts, whose reports are in tension with one another. Dr. Neil Farber's conclusory letter opining that Defendants were negligent in failing to immediately give Stiles Dilantin upon his entry into the jail did not analyze how and why any specific individual Defendant acted negligently. Moreover, Dr. Farber's opinion was mostly based on the heightened risk Stiles faced for a seizure as a result of his alcohol consumption, even though Dr. Karl Newman's review of Stiles' medical records showed an absence of alcohol in his body fluids at the time of his death.

Accordingly, we hold that the district court correctly granted summary judgment to Nurse McFadden because the facts available to Nurse McFadden at the time did not suggest that Stiles' medical needs were so urgent that the Fourth Amendment required a departure from the jail's ordinary prescription verification and dispensation procedures.

## B.    Nurse West

At roughly 10:40 a.m. on the morning of Stiles' death, Nurse West took over for Nurse McFadden, verified Stiles' prescription through his pharmacy, and placed Stiles' chart in a stack for Dr. Sova to review so that he could order the prescription. Plaintiff argues that this conduct was objectively unreasonable because once Nurse West verified Stiles' Dilantin prescription, she should have sought out a doctor and made sure that Stiles received his medication as soon as possible.

We disagree. The "Fourth Amendment reasonableness inquiry necessarily takes into account the sufficiency of the steps that officers did take." *Florek*, 649 F.3d at 600. Stiles did not enter the jail with any symptoms or pathology that would suggest that he was suffering from an acute medical emergency. Nurse West thus acted reasonably by verifying Stiles' Dilantin prescription and forwarding the file for physician review, because there were no obvious exigencies that demanded that she depart from established jail procedures. "Just as the Fourth

11

Amendment does not require a police officer to use the least intrusive method of arrest, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." *Tatum*, 441 F.3d at 1098 (citations omitted) (police acted reasonably when they promptly summoned necessary medical assistance, even if they did not administer CPR). Although Nurse West could have acted to make sure Stiles received his Dilantin more expeditiously, nothing in the medical file that was handed to her made it obvious that she was *required* to do more to preserve Stiles' well-being. *See Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("The Fourth Amendment requires reasonableness, not immediacy."). We therefore affirm the district court's grant of summary judgment as to Nurse West.

### C.    Nurse Booker

Nurse Booker took over for Nurse West as the nurse on duty at 2:30 p.m. Plaintiff asserts that at some unspecified point between 2:30 p.m. and 6:00 p.m., Nurse Booker would have received Dr. Sova's Dilantin prescription, and should have immediately dispensed the Dilantin rather than waiting for it to be dispensed during the scheduled medical rounds at 8:00 p.m. However, there is no evidence whatsoever in the record that Nurse Booker ever saw Stiles' Dilantin prescription, or that she was involved in Stiles' medical care in any way prior to his death. We therefore affirm the district court's grant of summary judgment to Nurse Booker as well.

### D.    Dr. Sova

Dr. Sova was the physician on duty at the jail between 2:30 p.m. and 6:00 p.m. on the day of Stiles' death. He prescribed Stiles Dilantin at some point during that period (Stiles' records show that the prescription came at 6:45 p.m., despite that time being after Dr. Sova's shift had ended). In response to hypothetical questions from Plaintiff during his deposition, Dr. Sova testified that if he had been made aware of specific warning signs showing Stiles' urgent need for Dilantin, he would have ordered that it be given immediately. Plaintiff argues that this is sufficient to show that Dr. Sova's conduct was objectively unreasonable. However, there is no evidence in the record that Dr. Sova ever became aware of the extent or

urgency of Stiles' medical needs. The chart that the jail nurses provided Dr. Sova did not indicate that Stiles needed Dilantin urgently, and no staff member told Dr. Sova as much. *Ortiz*, 656 F.3d at 530–31 (defendant's notice a critical component in evaluating objective reasonableness). Dr. Sova reviewed Mr. Stiles' records, approved his Dilantin prescription, and ordered that he receive Dilantin during the jail's next scheduled time for dispensing prescriptions at 8:00 p.m. We hold that no reasonable jury could find Dr. Sova's conduct objectively unreasonable in light of the information that was provided to him.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.

**McKEAGUE, Circuit Judge, with whom Judge SILER joins, concurring.** I am in full agreement with the result reached today. Stephen Stiles' death in custody is a regrettable tragedy that, with the benefit of hindsight, would seem to have been easily avoided. However, the facts of record simply do not show such wrongful conduct by any defendant as would support a finding of liability for violation of Stiles' constitutionally protected rights. I write separately to explain why the district court's assessment of the Estate's claim for deliberate indifference to serious medical needs under the Fourteenth Amendment was not erroneous.

The majority posits that the Sixth Circuit has "never squarely decided whether the Fourth Amendment's objective reasonableness standard can ever apply to a plaintiff's claim for inadequate medical treatment." Indeed, it is fair to say that some decisions of our court have purported to leave the question open as to whether a pretrial detainee's claim for denial of needed medical care should be evaluated under the Fourteen Amendment's deliberate-indifference standard or the Fourth Amendment's objective-unreasonableness standard. Yet, while we have never held that the objective-unreasonableness standard applies to a denial-of-medical-care claim of a detainee under circumstances like Stiles'—arrested pursuant to an arrest warrant (which necessarily issued only after a judicial officer's probable cause determination)— we *have* held that the deliberate-indifference standard applies.

That is, where the court *has* identified the governing standard, it has uniformly applied the deliberate-indifference standard. *See Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (applying deliberate-indifference standard to detainee's denial-of-medical-care claim stemming from booking process); *Harris v. City of Circleville*, 583 F.3d 356, 367 (6th Cir. 2009) (detainee's claim for denial of medical care assessed under deliberate-indifference standard); *Guy v. Metropolitan Gov't of Nashville*, --- F. App'x ---, 2017 WL 1476896 at *5–6 (6th Cir.

Apr. 25, 2017) (assessing detainee's claim for post-arrest denial-of-medical-care under deliberate-indifference standard and noting that, because the dividing line between the Fourth and Fourteenth Amendment zones of protection is the probable-cause hearing, the plaintiff's arrest pursuant to a judicially approved warrant rendered the Fourth Amendment not applicable); *Morabito v. Holmes*, 628 F. App'x 353, 358 (6th Cir. 2015) (detainee's denial-of medical-care claim evaluated under deliberate-indifference standard); *Jackson v. Wilkins*, 517 F. App'x 311, 317 (6th Cir. 2013) (same).

Respectfully, I would hold that we are bound by this line of cases. Evaluation of the Estate's denial-of-medical-care claim under this more demanding standard leads even more clearly and surely to the same conclusion reached by the majority: the district court's summary judgment ruling was proper. I therefore concur in the decision to affirm.